UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHMUEL COHEN, YEHUDA FISCHER, ELIEZER ROSENBERGER and MAYER TANNENBAUM *on behalf of themselves and all others similarly situated*,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALLEGIANCE ADMINISTRATORS, LLC d/b/a PERFORMANCE FIRST,<br><br>　　　　　Defendant. | CLASS ACTION COMPLAINT<br><br>Case No. 2:20-cv-3411 |

　　　　Plaintiffs Shmuel Cohen, Yehuda Fischer, Eliezer Rosenberger and Mayer Tannenbaum ("Plaintiffs"), by their undersigned attorneys, brings this class action complaint against Defendant Allegiance Administrators, LLC d/b/a Performance First, alleging as follows:

### I.　　NATURE OF THE ACTION

　　　　1.　　This is a class action against Allegiance Administrators, LLC d/b/a Performance First ("Performance First" or "Defendant") for violations of the Ohio Consumer Sales Practices Act (the "CSPA"), breach of contract, and unjust enrichment. Plaintiffs and the members of the Class they seek to represent are all consumers who entered into contracts with Performance First, but who failed to receive the benefits of those contracts because of the intentional and deceptive conduct of Performance First.

　　　　2.　　Plaintiffs are of many consumers who choose to lease, rather than buy, a vehicle. Like essentially all others who enter into such transactions, Plaintiffs entered into a leasing agreement through which they became responsible at the end of the applicable term for any excess "wear and tear" on the leased vehicle.

　　　　3.　　It is often the case that a consumer's liability for excess wear and tear represents a

1

significant charge at the end of a lease. Aware that car shoppers can be wary of committing to such an open-ended obligation, many dealerships now offer "protection" against large "wear and tear" assessments by giving consumers the apparent opportunity to shift the risk of loss through contractual arrangements with Defendant.

4. The agreement marketed by Defendant, known as an "Excess Wear & Tear Protection Waiver" (the "Waiver Agreement"), requires a vehicle lessee to pay a flat sum, typically $500, upon the commencement of the lease period. In return, subject only to the "terms and conditions set forth" in the Waiver Agreement, Performance First promises to "reimburse [the consumer] for charges defined as Excess Wear and Tear" in the consumer's lease.

5. In reality, the promises made by Performance First in the Waiver Agreement are largely illusory. Instead of honoring its obligations to reimburse lessees for charges due to "Excess Wear and Tear," subject only to "terms and conditions" listed in the Waiver Agreement, Performance First has a policy of denying reimbursement for reasons completely extraneous to the Waiver Agreement, *e.g.* on grounds that it will not cover any scratch that is longer than 12 inches in length.

6. When challenged over its failure to live up to its word, Performance First has advised lessees that if they "want to spend a couple thousand dollars [in legal fees] to try to get [a lesser amount] in damage done to the vehicle covered, that's their prerogative."

7. Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, seek recovery of damages for Performance First's unfair and deceptive conduct under the CSPA, breach of contract, and unjust enrichment. Plaintiffs also request entry of an Order awarding injunctive and declaratory relief requiring cessation of the unfair and deceptive practices described in this Complaint.

## II.  JURISDICTION AND VENUE

8. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because it is brought as a class action, on behalf of a Class of over 100 Class Members, whose claims aggregate in excess of $5 million, and which includes members whose state citizenship is diverse from that of Defendant.

9. This Court has personal jurisdiction over Defendant Allegiance Administrators, LLC d/b/a Performance First because Performance First is headquartered in the state of Ohio, transacts business within the state of Ohio, and by virtue of the fact that Performance First's executive offices are located in the state, Performance First continually and systematically conducts business throughout the state.  *See* Ohio Rev. Code § 2307.382.

10. Venue is proper because Defendant Performance First resides within this District and it was in this District that a substantial part of the events or omissions giving rise to Plaintiffs claims occurred.  *See* 28 U.S.C. § 1391(a)(1)-(2).

## III.  PARTIES

11. Plaintiff Shmuel Cohen is an individual residing in Airmont, New York.  On August 16, 2017, Mr. Cohen entered into a Waiver Agreement with Defendant Performance First.

12. Plaintiff Yehuda Fischer is an individual residing in Monsey, New York. On May 26, 2016, Mr. Fischer entered into a Waiver Agreement with Defendant Performance First.

13. Plaintiff Eliezer Rosenberger is an individual residing in Spring Valley, New York. On May 1, 2017, Mr. Rosenberger entered into a Waiver Agreement with Defendant Performance First.

14. Plaintiff Mayer Tannenbaum is an individual residing in Spring Valley, New York. On March 28, 2016, Mr. Tannenbaum entered into a Waiver Agreement with Defendant

Performance First.

15. Defendant Allegiance Administrators, LLC d/b/a Performance First is a limited liability company organized under the laws of Ohio, with its principal executive offices located at 5500 Franz Road, Suite 100, Dublin, Ohio 43017.

### IV. CLASS ACTION ALLEGATIONS

16. Plaintiffs bring this action as a class action, on behalf of the following class, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

> Each person who entered into an Excess Wear & Tear Protection Waiver with Performance First to provide coverage for a leased vehicle and who (a) submitted at least one eligible claim for coverage under the Waiver Agreement and (b) was denied coverage for a stated reason that is not a grounds for non-coverage under the terms and condition set forth in the Waiver Agreement.

17. The Class Period is defined as the limitations time period applicable under the claims to be certified.

18. The following persons are expressly excluded from the Class: (1) Defendant and its parent companies, subsidiaries, affiliates, and controlled persons; (2) officers, directors, agents, servants, or employees of Defendant, and the immediate family members of any such person; (3) all persons who make a timely election to be excluded from the proposed Class; (4) governmental entities; and (5) any Judge to which this case is assigned and the Judge's staff.

19. Plaintiffs reserve the right to revise this class definition and to add subclasses as appropriate based on facts learned as the litigation progresses.

20. This action may be maintained as a class action because there is a well-defined community of interests in the litigation and the proposed Class is easily ascertainable.

21. <u>Numerosity</u>: Performance First describes itself as an "industry leader," and it has relationships with roughly 2,000 dealers through which it offers consumers "efficient and

4

profitable vehicle service contracts." *Who We Are*, ALLEGIANCE ADMINISTRATORS, http://www.alltpa.com/aboutus.aspx (last visited June 29, 2020). Based on this sort of publicly available data, Plaintiff approximates that the Class numbers in the thousands, and that joinder of all Class Members is impracticable.

22. <u>Common Questions Predominate</u>: This action involved common questions of law and fact applicable to each Class Member that predominate over questions that affect only individual Class Members. Questions of law and fact common to each Class Member include:

   a. Whether Performance First has a policy and practice to deny eligible claims made under its Waiver Agreement for reasons other than a "term[]" or "condition[] set forth" in the Waiver Agreement;

   b. Whether Performance First's conduct and representations when inducing consumers to enter into Waiver Agreements, only to deny consumers the benefit of those Waiver Agreements by failing to honor its obligations under the contracts, constitute unfair, deceptive, or unconscionable practices under the CSPA;

   c. Whether Performance First's denial of eligible claims under its Waiver Agreement, for reasons other than "terms and conditions set forth" in the Waiver Agreement, constitutes a breach of contract;

   d. Whether Performance First is unjustly enriched by accepting consumers' payments under its Waiver Agreements, only to deny consumers the benefit of those Waiver Agreements by failing to honor its obligations under the contracts.

23. <u>Typicality</u>: Plaintiffs entered into a Waiver Agreement with Performance First when they leased a vehicle during the Class Period, and Performance First denied their eligible claim for reasons other than a term or condition set forth in the Waiver Agreement. This same unfair and deceptive conduct, representing a breach of the Waiver Agreement, was experienced by all Class Members. Defendant's unlawful, unfair, and/or fraudulent actions toward all Class Members involve the same business practices described in this Complaint, irrespective of where they occurred or were experienced. Plaintiffs and each Class member sustained similar injuries arising out of Defendant's conduct in violation of law. The injuries of each member of the Class

were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of each member of the Class and are based on the same legal theories.

24. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to members of the Class and will diligently discharge those duties by seeking the maximum possible recovery for the Class.

25. <u>Superiority</u>: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of other Class Member's rights and the disposition of other Class Members' interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment

of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

26. The preceding paragraphs establish that this matter satisfies the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure, and the case may proceed as a class action under Rule 23(b)(3) because questions of law or fact common to each Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

27. <u>Declaratory and Injunctive Relief</u>: All of the requirements for Rule 23(b)(2) class certification are satisfied. First, as demonstrated above, Plaintiffs have satisfied the prerequisites of Rule 23(a) including numerosity, commonality, typicality, and adequacy of representation. Rule 23(b)(2) requirements are satisfied in that the Defendant has acted or refused to act on grounds generally applicable to all Class Members, thereby making appropriate final declaratory and injunctive relief with respect to the Rule 23(b)(2) Class as a whole. Such relief will provide a remedy for Defendant's uniform acta and omissions toward the Rule 23(b)(2) Class.

28. Adjudication of this case on a class-wide basis is manageable by this Court. The Waiver Agreements that were entered into by Plaintiffs and each Class Member are the same or so similar as to be legally and factually indistinguishable in all material respects. As a result, it will not be difficult for a jury to determine whether Performance First committed the violations alleged in this Complaint. This Court is an appropriate forum for this dispute.

### V. FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

29. Performance First makes its contracts available to consumers by way of its relationships with "about 2,000 [car] dealers" throughout the country. Jim Henry, *Dimension,*

7

*National Administrative Form New Service Contract Provider*, Automotive News, Feb. 15, 2012, available at https://www.autonews.com/article/20120215/FINANCE_AND_INSURANCE/120219923/dimension-national-administrative-form-new-service-contract-provider (last visited June 29, 2020) (statement by Performance First's executive vice president for sales and marketing).  Because a modern-day feature of automobile leases places upon the lessee responsibility for "excessive wear and tear" exhibited by the subject vehicle at the end of the applicable term, and upon information and belief, it is the standard practice at those dealerships to encourage consumers signing vehicle leases to also enter into Excess Wear & Tear Protection Waivers with Performance First.

30. Performance First's Waiver Agreement promises to reimburse a lessee for excess wear and tear charges, or to "waive" a lessee's responsibility for the same, "up to a maximum of five thousand dollars ($5,000)."  The Waiver Agreement specifies that Performance First's obligations under the contract are subject only to "terms and conditions set forth" in the Waiver Agreement.

31. The Waiver Agreement contains very few relevant "terms and conditions."  As pertinent to Class Members, the Waiver Agreement states that Performance First will not be responsible for damage that would be covered by an automobile policy providing "comprehensive" and "collision" coverage, "*unless* repair of damage from any single event results in a cost to repair of less than the Maximum Single Event Limit" of $500 or $1,000.

32. Other "terms and conditions" in the Waiver Agreement exclude things like "charges resulting from use of the vehicle for racing or commercial purposes" and "[c]harges due to the presence of or the cost to remove signs, lettering, [or] bumper stickers."  The term "eligible" claim, as used in this Complaint and in the Class Definition, refers to a claim that complies with all terms

8

and conditions in the Waiver Agreement.

33. It is Performance First's policy and practice to deny eligible claims for reasons other than a term or condition found in the Waiver Agreement. For example, Performance First regularly denies claims because a scratch is greater than 12 inches in length or because of its internal assessment that particular damage is "clearly" attributable to the car "hit[ting] something."

34. Reasons like these, along with myriad other similar justifications Performance First relies upon to deny claims, are not "terms and conditions set forth" in the Waiver Agreement. They are, by contrast, the very definition of "wear and tear," which consumers would expect to be covered by the Waiver Agreement.

35. The Waiver Agreement represents that Performance First's satisfaction of the contract is guaranteed by the Lloyd's Underwriting Syndicate based in London. Upon information and belief, this representation is not true.

36. Indeed, Performance First does not direct disgruntled consumers to Lloyd's of London. Instead, when faced with complaints from those unhappy about the denial of eligible claims, Performance First has advised lessees that if they "want to spend a couple thousand dollars [in legal fees] to try to get [a lesser amount] in damage done to the vehicle covered, that's their prerogative."

37. Information available via Performance First's internet presence reveals that its denial of claims for something other than a contractual term or condition does not occur on an ad hoc basis, but rather is pursuant to uniform company policy.

38. For example, regarding the Waiver Agreement, and available on Performance First's website, indicates that the contract does not apply to dents over 4 inches in diameter. *See* Waiver Agreement Brochure (Rev. 12-15), *available at*

9

http://www.alltpa.com/Static/Brochure/PerformanceFirstWearTearBrochure.pdf.  That uniform policy and practice of Performance First is not a term or condition of the Waiver Agreement itself.

39. According to Bob Cramer, a Performance First decision-maker, because the non-contractual brochure "limits dents to 4 inches," it is also the company's position "that a 12 inch limit on scratches is more than fair, considering the dent limit."  This is another uniform policy with respect to the denial of claims that appears nowhere in the actual Waiver Agreement.

## VI. PLAINTIFF'S ALLEGATIONS

### SHMUEL COHEN

40. Plaintiff Shmuel Cohen on August 16, 2017 entered into a 24-month lease for a Nissan Sentra.  The Lease Agreement made Mr. Cohen responsible at the end of the lease "for all repairs to th[e] Vehicle that are not the result of normal wear and use."

41. Because of this provision, Mr. Cohen was encouraged when closing the deal to enter into a Waiver Agreement with Performance First.  In reliance on the Waiver Agreement's representation that Performance First would bear responsibility for excess wear and tear to the Sentra, subject only to the terms and conditions in the Waiver Agreement, Mr. Cohen paid $500 to contract with Performance First under the Waiver Agreement.

42. At the end of the lease's term, Mr. Cohen was charged $168 for excess wear and tear, and he submitted to Performance First an eligible claim for that amount.

43. Performance First wrongfully denied Mr. Cohen's claim because the excess wear and tear charge was for a scratch "GR 12 "", *i.e.* greater than 12 inches in length.

44. Nowhere does the Waiver Agreement state that protection is unavailable for scratches over 12 inches in length.

**YEHUDA FISCHER**

45. Plaintiff Yehuda Fischer entered into a 36-month lease for a 2016 Honda Odyssey on May 26, 2016.

46. The Lease Agreement states that Mr. Fischer "may be charged for excessive wear and damage based on Lessor's standards for normal use".

47. Because of this provision, Mr. Fischer was encouraged when closing the deal to enter into a Waiver Agreement with Performance First.

48. In reliance on the Waiver Agreement's representation that Performance First would bear responsibility for excess wear and tear to the Odyssey, subject only to the terms and conditions in the Waiver Agreement, Mr. Fischer paid $500 to contract with Performance First under the Waiver Agreement.

49. At the end of the lease's term, Mr. Fischer was charged $2,069.78 for excess wear and tear, and he submitted to Performance First an eligible claim for that amount.

50. Performance First covered only $1,278.50 of Mr. Fischer's claim.

51. Performance First wrongfully denied various aspects of Mr. Fischer's claim because the damage was "Over 12"", *i.e.* greater than 12 inches in length.

52. Nowhere does the Waiver Agreement state that protection is unavailable for damage over 12 inches in length.

**ELIEZER ROSENBERGER**

53. Plaintiff Eliezer Rosenberger entered into a 24-month lease for a 2017 Nissan Sentra on May 01, 2017.

54. The Lease Agreement states that Mr. Rosenberger "may be charged for excessive wear based on our standards normal use".

55. Because of this provision, Mr. Rosenberger was encouraged when closing the deal

11

to enter into a Waiver Agreement with Performance First.

56. In reliance on the Waiver Agreement's representation that Performance First would bear responsibility for excess wear and tear to the Sentra, subject only to the terms and conditions in the Waiver Agreement, Mr. Rosenberger paid $500 to contract with Performance First under the Waiver Agreement.

57. At the end of the lease's term, Mr. Rosenberger was charged $2,183.06 for excess wear and tear, and he submitted to Performance First an eligible claim for that amount.

58. Performance First covered only $711.35 of Mr. Rosenberger's claim.

59. Performance First wrongfully denied various aspects of Mr. Ronsenberger's claim because the damage was "GR 12"", *i.e.* greater than 12 inches in length.

60. Nowhere does the Waiver Agreement state that protection is unavailable for scratches over 12 inches in length.

## MAYER TANNENBAUM

61. Plaintiff Mayer Tannenbaum entered into a 36-month lease for a 2016 Honda Odyssey on March 28, 2016.

62. The Lease Agreement states that Mr. Tannenbaum "may be charged for excessive wear and damage based on Lessor's standards for normal use".

63. Because of this provision, Mr. Tannenbaum was encouraged when closing the deal to enter into a Waiver Agreement with Performance First.

64. In reliance on the Waiver Agreement's representation that Performance First would bear responsibility for excess wear and tear to the Odyssey subject only to the terms and conditions in the Waiver Agreement, Mr. Tannenbaum paid $500 to contract with Performance First under the Waiver Agreement.

65. At the end of the lease's term, Mr. Tannenbaum was charged $2,863.67 for excess

wear and tear, and he submitted to Performance First an eligible claim for that amount.

66. Performance First covered only $828.00 of Mr. Tannenbaum's claim.

67. Performance First wrongfully denied various aspects of Mr. Tannenbaum's claim because the damage was "Over 12"", *i.e.* greater than 12 inches in length.

68. Nowhere does the Waiver Agreement state that protection is unavailable for scratches over 12 inches in length.

## VII. CAUSES OF ACTION

### COUNT I
### CONSUMER SALES PRACTICES
### CHAPTER 1345 OHIO REVISED CODE

69. Plaintiffs repeat and reallege each and every allegation contained above as though set forth here in full.

70. Defendant violated Chapter 1345 of the Ohio Revised Code, the CSPA, because it engaged in unfair and deceptive acts or practices and/or unconscionable consumer sales acts and practices in this state.

71. Plaintiffs contracted with Defendant Performance First under the Waiver Agreement for personal, family, or household purposes. Plaintiffs' dealings with performance first were a "consumer transaction" as defined by the CSPA.

72. Defendant Performance First is engaged in the business of effecting or soliciting consumer transactions and is therefore a "supplier" for purposes of the CSPA.

73. Plaintiffs are a "consumer" under the CSPA.

74. The CSPA prohibits, in connection with consumer transactions, unfair, deceptive, or unconscionable consumer sales practices that mislead consumers about the nature of the product or service they are receiving. Specifically, the CSPA prohibits suppliers from

representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have.

75. Under Ohio Revised Code § 1345.07(A)(3)(c), the following acts are deemed to be deceptive pursuant to cases located within the Attorney General's Public Inspection File:

- Making any express or implied statement in connection with the marketing or advertisement of any product that is false, or has the capacity, tendency, or effect of deceiving or misleading consumers; or omitting any material information such that the express or implied statement deceives or tends to deceive consumers. *State of Ohio ex re. Rogers v. Airborne Health, Inc.*, Case No. 08-CVH-1217848 (Ct. Com. Pleas, Franklin Cty.).

- Making, or causing to be made, any written or oral claim that is false, misleading, or deceptive. *State of Ohio ex rel. Michael DeWine v. Amgen, Inc.*, Case No. 15CV7216 (Ct. Com. Pleas, Franklin Cty.).

- Representing that any product or service has any sponsorship, approval, characteristics, ingredients, uses, benefits, quantities, or qualities that it does not have. *State of Ohio ex rel. Michael DeWine v. Amgen, Inc.*, Case No. 15CV7216 (Ct. Com. Pleas, Franklin Cty.).

76. As alleged in this Complaint, Defendant at all relevant times violated the CSPA by falsely stating to consumers that it would bear responsibility for excess wear and tear charges imposed by a lessor, subject only to the "terms and conditions set forth" in its Waiver Agreement, when it was and is Defendant's policy and practice to deny eligible claims for reasons not listed in the Waiver Agreement.

77. Defendant at all relevant times also violated the CSPA by representing that the Waiver Agreement has the sponsorship or approval of the Lloyd's Underwriting Syndicate when, upon information and belief, that is not true.

78. These deceptive representations and concealments were reasonably calculated to deceive Plaintiffs and Class Members, were made with the intent to deceive Plaintiffs and Class Members, and did in fact deceive Plaintiffs and Class Members, who paid for contractual benefits

they did not receive.

79. As described more specifically above, Defendant's representations and concealments constitute a course of conduct which continues to this day.

80. But for Defendant's deceptive representations and concealments of material fact, Plaintiffs and Class Members would not have paid significant sums to enter into the Waiver Agreement.

81. As a direct and proximate cause of Defendant's deceptive conduct, Plaintiffs and Class Members have been injured in an amount to be determined at trial.

82. Defendant's violations of the CSPA were knowing.

83. Plaintiffs seek a declaratory judgment that Defendant has violated the CSPA, an injunction enjoining Defendant from continuing to make the misrepresentations described in this Complaint, an award of damages to Class Members for the harm they have suffered as a result of Defendant's conduct, and civil penalties.

**COUNT II**
**DECEPTIVE TRADE PRACTICES**
**CHAPTER 4165 OHIO REVISED CODE**

84. Plaintiffs repeat and reallege each and every allegation contained above as though set forth here in full.

85. Defendant violated Chapter 4165 because it engaged in deceptive trade practices in this state.

86. Specifically, as previously described, Defendant Performance First committed deceptive trade practices by:

- Representing that the Waiver Agreement had the "sponsorship" or "approval" of the Lloyd's Underwriting Syndicate when, upon information and belief, it did not;

- Advertised the Waiver Agreement with the intent not to sell it as advertised.

15

- Represented that the Waiver Agreement was of a particular standard, quality, or grade when it was actually of another.

87. Plaintiffs and Class Members have been damaged by reason of Defendant's violation of Chapter 4165 of the Ohio Revised Code.

## COUNT III
## BREACH OF CONTRACT

88. Plaintiffs repeat and reallege each and every allegation contained above as though set forth here in full.

89. Plaintiffs and Class Members entered into contractual agreements with Defendant via the Waiver Agreement.

90. In the Waiver Agreement, Defendant agreed to accept responsibility for excess wear and tear amounts charged to the Plaintiffs and Class Members by the lessor, subject only to "terms and conditions set forth" in the Waiver Agreement.

91. In actuality, when Plaintiffs and Class Members sought to enforce their contractual rights after the lessor assessed charges for excess wear and tear, Defendant wrongfully refused to honor its contractual obligations based on reasons other than "terms and conditions set forth" in the Waiver Agreement.

92. As a direct and proximate result of Defendant's breaches of contract, Plaintiffs and the Class suffered damages.

## COUNT IV
## UNJUST ENRICHMENT

93. Plaintiffs repeat and reallege each and every allegation contained above as though set forth here in full.

94. As an expected and intended result of its conscious wrongdoing as set forth in this Complaint, Defendant has profited and benefited from denying valid contractual benefits to

Plaintiffs and Class Members.

95. When paying the amount required to enter into a Waiver Agreement with Defendant, Plaintiffs and Class Members expected that Defendant would fulfill its own contractual obligations.

96. By denying Plaintiffs and Class Members the benefits of the bargain evidenced by the Waiver Agreement, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs seeks the following relief:

A. An Order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiffs as Class Representatives, and appointing their attorneys as Class Counsel;

B. A Judgment declaring that the unlawful conduct alleged in this Complaint is (a) a deceptive and unfair consumer sales practices under section 1345 of the Ohio Revised Code; (b) a deceptive trade practice under section 4165 of the Ohio Revised Code; (c) an unlawful breach of Defendant's contractual obligations; and (d) constitutes unjust enrichment by Defendant; and permanently enjoining Defendant, its affiliates, successors, transferees, assignees, and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on its behalf or in concert with Defendant, from continuing, maintaining, or renewing the unlawful conduct alleged in this Complaint;

C. An award to Plaintiffs and Class Members for the maximum amount of actual, statutory, punitive, exemplary and other damages allowed under law, as well as pre- and post- judgment interest at the highest legal rate; costs of suit, and reasonable

attorneys' fees; and

D. Such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, or all issues so triable.

July 7, 2020

                              Respectfully Submitted,

                              */s/ Steven C. Babin Jr.*
                              Steven C. Babin, Jr. #0093584
                              Babin Law, LLC
                              1320 Dublin Road, #100
                              Columbus, OH 43215
                              (614) 384-7035 Telephone
                              (614) 224-6066 Fax
                              steven.babin@babinlaws.com

                              */s/Daniel A. Schlanger*
                              Daniel A. Schlanger
                              (*Pro Hac Vice Application To Be Submitted*)
                              Schlanger Law Group LLP
                              80 Broad Street, Suite 1301
                              New York, NY 10004
                              T: 212-500-6114
                              F: 646-612-7996
                              E: dschlanger@consumerprotection.net

                              *Counsel for Plaintiffs and the Putative Class*