**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SHMUEL COHEN, et al.,**

        **Plaintiffs,**

    **v.**                            **Civil Action 2:20-cv-3411**
                                         **Judge James L. Graham**
                                         **Magistrate Judge Jolson**

**ALLEGIANCE ADMINISTRATORS,**
**LLC,**

        **Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel (Doc. 87) and Defendant Allegiance Administrators, LLC's letter brief (Doc. 93), which the Court construes as a Motion to Compel. For the following reasons, Plaintiffs' Motion (Doc. 87) is **GRANTED**, and Defendant's Motion (Doc. 93) is **DENIED without prejudice**. Defendant is **ORDERED** to produce the at-issue class data to Plaintiffs within **twenty-one (21) days** of the date of this Order.

**I.      BACKGROUND**

Plaintiffs bring this class action claim against Defendants Allegiance Administrators, LLC d/b/a Performance First ("Allegiance") and Autoguard Advantage Corporation ("Autoguard"), alleging violations of the New York General Business Law, §§ 349 & 350, and breach of contract. (Doc. 52-1, ¶ 1). Plaintiffs are consumers who leased vehicles and were, under their leasing agreements, responsible for excess wear and tear on their vehicles at the end of their lease term. (*Id.*, ¶ 2). They attempted to offset their risk of loss for excess wear and tear by entering into a contractual agreement with Defendants, known as the "Excess Wear & Tear Protection Waiver" (the "Waiver Agreement").

The Waiver Agreement purportedly charges consumers a flat fee, typically $500, at the end of their lease term. (*Id.*, ¶ 4). In exchange, Defendants agree to waive or reimburse the consumer for charges that constitute excess wear and tear in the leasing agreement. (*Id.*, ¶ 5; *see also, e.g.,* Doc. 47-1 at 2–3). This waiver or reimbursement is subject to certain exclusions set forth in the Waiver Agreement. (*Id.* at 3). Yet, Plaintiffs maintain that Defendants "have a policy of denying reimbursement for reasons completely extraneous to the Waiver Agreement[.]" (Doc. 52-1, ¶6). Thus, Plaintiffs, "on behalf of themselves and a Class of similarly situated individuals," seek recovery of damages for breach of contract and violations of the New York General Business Law, in addition to declaratory and injunctive relief. (*Id.*, ¶¶ 8–9).

Now, the parties have brought two discovery disputes to the Court. First, they cannot agree on a method for searching previously denied reimbursement claims, which the parties refer to as the class data. (Doc. 83). Accordingly, Plaintiffs have moved to compel production of the class data. (Doc. 87). Second, the parties cannot agree on the production of a Fee Sharing Agreement between Plaintiffs' counsel and attorney Eli Sarfaty, who also represents several leasing companies. (Doc. 89). Defendant Allegiance maintains that the details of the Fee Sharing Agreement support a conflict of interest that makes the named Plaintiffs inadequate class representatives. (Doc. 93 at 1). Plaintiffs produced a redacted version of the agreement, which Defendant finds insufficient. (Doc. 89). The parties submitted simultaneous letter briefs detailing their respective positions. (Docs. 93, 94). Defendant, through its brief, requests production of an unredacted copy of the agreement (Doc. 93 at 1), so the Court construes that brief as another motion to compel. Both issues have been fully briefed (Docs. 92, 95, 96, 97) and are ripe for resolution.

## II.     STANDARD

Two federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine,* 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III.     DISCUSSION

### A.  Plaintiffs' Motion to Compel (Doc. 87)

The parties have been unable to agree to a search methodology for denied reimbursement claims. These claims are of central importance to Plaintiffs, as they seek to represent a class comprised of each consumer who "(a) submitted at least one eligible claim for coverage under the Waiver Agreement and (b) was denied coverage for a stated reason set forth in Defendants' claims report . . . that is not a grounds for non-coverage under the terms and conditions set forth in the

Waiver Agreement." (Doc. 52-1, ¶ 66). Defendant Allegiance, who maintains the claims database, narrowed its approximately 10,000 stored claims to a sample of 2,525 claims over the relevant class time period. (Doc. 87 at 2). Plaintiffs then proposed search terms which would exclude claims clearly denied under the Waiver Agreement. In doing so, they borrowed language directly from the listed exclusions in the terms and conditions of the Waiver Agreement. (Doc. 87-2 at 4–5). For example, they suggested searching the warranty and notes sections of the claims reports for language like "poor body work" or "incomplete body work" and excluding those claims (*id.*), because "[p]oor or incomplete body work" is a listed exclusion in the Waiver Agreement (*see, e.g.*, Doc. 92-1 at 3).

Defendant responded that it does not process claims using the language of the Waiver Agreement in that manner, and the search terms were thus unacceptable. (Doc. 87-3 at 3–4). When Defendant requested that its IT department perform the search with those terms, only five claims were excluded. (*Id.* at 4). In lieu of Plaintiffs' proposed search terms, Defendant suggested that the search be tailored to identify claims with "physical characteristics of the alleged wear and tear claims [Plaintiffs] contend should have been covered." (*Id.*). Particularly, Defendant offered that it could search claims for the terms "scratch" and "12", "given that Plaintiffs could represent a class of similarly-situated claimants whose claims were denied for scratches longer than 12 inches." (*Id.*).

Plaintiffs countered that the twelve-inch scratch criterion was "far too underinclusive and fails to reflect the scope of the proposed class." (Doc. 87-4 at 3). They renewed their request for the data returned by their original search terms (*id.*), which Defendant refused to produce (Doc. 87-5 at 3). Now, Plaintiffs move to compel production of the class data.

4

"Designing search terms to be used to produce . . . electronically stored information requires 'careful thought, quality control, testing, and cooperation with opposing counsel." *Ohio A. Phillip Randolph Inst. v. Smith*, No. 1:18cv357, 2018 WL 6308849, at \*5 (S.D. Ohio Dec. 3, 2018) (quoting *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009)). Input from the producing party is particularly important, as that party is most familiar with its own records and thus has insight on how to craft search terms efficiently. *Id.* (citing *L-3 Commc'ns Corp. v. Spartan Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015)). If the producing party finds the requested search terms overly burdensome, it has an obligation to "narrow[ ] the offending search terms in a way that address [its] concerns while still retrieving as many of the relevant documents targeted by the disputed search terms are possible." *L-3 Commc'ns Corp.*, 313 F.R.D. at 670.

Here, Plaintiffs seek information about a putative class of consumers who had claims denied for reasons not enumerated in the Waiver Agreement. They thus made a reasonable suggestion for a party unfamiliar with the particular details of the data storage—asking Defendant to exclude any claim denial which contained language similar to the listed exclusions in the Waiver Agreement. Defendant found those terms overly broad and not coherent with the manner in which it catalogued denials. But rather than utilize its familiarity with the database to craft narrower terms that would still retrieve as many of the relevant documents sought by Plaintiffs as possible, Defendant offered search terms for a different putative class: consumers who had claims denied for scratches twelve inches or longer on their vehicles.

Indeed, Defendant is insistent upon its belief that Plaintiffs' proposed class is not "objectively identifiable" and states various arguments against class certification. (Doc. 92 at 11, 3–4, 13–14). And Defendant again moves for a protective order precluding discovery while class

5

certification is resolved.  (*Id.* at 13–14).  The Court made clear over a year ago that written discovery and document production would not be stayed, nor bifurcated to postpone class discovery.  (Doc. 28).  Further, the parties were ordered to craft mutually agreeable search terms for class data in June 2021.  (Doc. 63).  Discovery must continue without further delay.

Currently, the relevant inquiry is simply whether the discovery sought is relevant to Plaintiffs' claims, and whether it will be overly burdensome for Defendant to produce.  The claims denials returned by Plaintiffs' search methodology are clearly relevant to their class claims.  Any claims denied during the relevant time period may have been denied for reasons not enumerated in the Waiver Agreement and may therefore support Plaintiffs' class allegations.  And Plaintiffs, through their suggested exclusionary language, made an attempt to eliminate those claims which clearly do not fall into that category.  While the claims could have been further narrowed by a better designed search methodology, Defendant did not make use of its superior knowledge of the database to meaningfully suggest search terms which would narrow the discovery while still retrieving as many of the relevant documents as possible.  Even accepting Defendant's view that Plaintiffs' claims were denied under the Waiver Agreement "because the damage sustained to their vehicles could only be the result of collisions and/or vehicle impacts, such as long sustained scratches, large dents, and gaping holes[,]" Defendant only offered search criteria to find claims denied for long sustained scratches, not any of the other "objectively identifiable" criteria that it purportedly uses to deny claims.

Nor does the Court find that producing the 2,520 claims returned by Plaintiffs' search methodology would be unduly burdensome for Defendant.  First, Defendant has already performed the relevant search and identified the corresponding claims.  (Doc. 92 at 8).  Second, the claims are electronically stored and readily transmissible.  Third, the overall production is not that

voluminous, as each claims report is only a few pages long.  (*See*, *e.g.*, Docs. 45-1, 45-2, 45-3, 45-4).  And finally, Defendant has made no representation that the claims reports need to be reviewed before they are produced.

Simply put, Plaintiffs are entitled to relevant discovery that is not unduly burdensome for Defendant to produce.  And such is the case with the claims reports at issue.  Accordingly, Plaintiffs' Motion to Compel (Doc. 87) is **GRANTED**.  Defendant Allegiance is **ORDERED** to produce the at-issue class data to Plaintiffs within **twenty-one (21) days** of the date of this Order.

### B. Defendant's Motion to Compel (Doc. 93)

The Fee Sharing Agreement at issue describes the division of fees between Schlanger Law Group and Mr. Sarfaty—an attorney whose involvement in this action, according to Defendant Allegiance, reveals a conflict of interest for the named Plaintiffs.  (Doc. 93 at 1).  In the version of the agreement provided to Defendant, the particular "fee-split methodology" was redacted.  (Doc. 94 at 4).  Defendant asks the Court to compel production of an unredacted version of the Fee Sharing Agreement, which it believes will support its argument that the named Plaintiffs are inadequate class representatives.  (Doc. 93 at 1).

Mr. Sarfaty also represents fifteen leasing companies who are not parties to the present action.  (Doc. 93-1 at 6).  The Waiver Agreement covered vehicles that had been leased through these leasing companies.  (Doc. 93 at 2).  The leasing companies have purportedly challenged Defendant's administration of claims and, through Mr. Sarfaty, threatened legal action against Defendant in early 2019.  (*Id.*).  However, because they are not parties to the Waiver Agreement, the leasing companies had no standing to sue.  (*Id.*).  Considering this history, Defendant argues that Mr. Sarfaty has divided his loyalties between the proposed class here and the leasing companies themselves.  Defendant claims that his involvement "raise[s] legitimate questions as to

7

who the real party is in driving this litigation," alleging that the current action is an attempt by the leasing companies to circumvent their lack of standing. (Doc. 94-3 at 3). Thus, Defendant contends that the Fee Sharing Agreement is discoverable to shed light on a potential conflict of interest between Mr. Sarfaty and the proposed class members. (Doc. 95 at 2).

The parties do not dispute Mr. Sarfaty's role, nor do they seriously dispute that the leasing companies have an interest in the outcome of this litigation. (*E.g.*, Doc. 93 at 4; Doc. 96 at 2). Instead, the issue is whether the alleged conflict should permit discovery of the entire unredacted Fee Sharing Agreement.

According to Defendant, the Fee Sharing Agreement would bear on the adequacy of representation. (Doc. 93 at 4). Before a court will certify a class, the named plaintiffs and class counsel must demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4), 23(g). In general, the court looks at "whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013).

Defendant challenges the adequacy of the named Plaintiffs to represent the class. (Doc. 93 at 3–5). It suggests that the leasing companies had a hand in selecting named Plaintiffs, and therefore this action is not about collecting damages for the class at large but "to compel changes in the way [Defendant's policies] are administered." (*Id.* at 2, 4). Moreover, because Defendant maintains that "Plaintiffs and [their leasing company] were on opposite sides of vehicle lease contracts, which required Plaintiffs to pay for alleged wear and tear damage to the leased vehicles at the time of termination of those lease contracts," the Plaintiffs and the leasing companies could become adverse parties in an action to recover those damages. (*Id.* at 4). Defendant argues that

8

the fee-splitting information will shed light on Mr. Sarfaty's role, and by extension the leasing companies' role, in steering the litigation. (*Id.* at 5).

Plaintiffs deny the existence of any such conflict, claiming that the leasing companies are not involved in this action.  (Doc. 96 at 2).  Even assuming their involvement, Plaintiffs claim that the leasing companies do not assess excess wear and tear damages against lessees at the end of a lease period, and the companies' interests sufficiently align with their own, resolving any question of adequacy.  (Doc. 94 at 2 n.2, Doc. 96 at 2).  Thus, Plaintiffs say the Fee Sharing Agreement is irrelevant to Defendant's adequacy arguments. (Doc. 94 at 3–5).

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  The issue here is whether the redacted portion of the Fee Sharing Agreement bears on adequacy of representation enough to be relevant, and whether it is proportional to the needs of the case at this stage of the litigation.

The discovery of fee agreements generally is not relevant and "rarely appropriate" for questions of class certification.  *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009).  While courts do permit discovery of fee agreements, the requesting party generally must demonstrate their particular relevance to the case as opposed to other available discovery.  *See Abernethy v. Corinthian Colleges, Inc.*, No. 2:10-CV-131, 2011 WL 3107729, at *2 (S.D. Ohio July 25, 2011); *see also In re Riddell Concussion Reduction Litig.*, Civ. No. 13-7585, 2016 WL 7325512, at *3 (D.N.J. Jan. 19, 2016).  In the class certification context, fee agreements typically have no relevance to adequacy unless the party seeking discovery can demonstrate, with particularity, how the agreement would demonstrate a conflict of interest or other prima facie

challenge (such as when named plaintiffs do not have the funds to sustain the litigation). *In re Riddell*, 2016 WL 7325512, at *3.

When alleging a relevant conflict of interest, the fee agreement itself must be relevant to proving the existence or significance of such a conflict. Fed. R. Civ. P. 26(b)(1). Courts generally do not permit discovery of fee agreements prior to certification when the agreements are unlikely to reflect the purported conflict, or when the agreements would not reveal anything the requesting party does not already know. *See In re Takata Airbags Prods. Liab. Litig.*, MDL No. 15-2599, 2016 WL 5844309 (S.D. Fla. May 23, 2016). Likewise, courts generally do not permit discovery of fee agreements when less intrusive forms of discovery exist (namely, depositions of named plaintiffs). *See 37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*, No. 15 Civ. 9924, 2017 WL 5126103 (S.D.N.Y. Oct. 5, 2017); *see also In re Ocean Bank*, No. 06 C 3515, 2007 WL 1063042 (N.D. Ill. Apr. 9, 2007).

Defendant's principal argument regards Mr. Sarfaty as an agent of a hostile third party—the leasing companies—and it claims that the Fee Sharing Agreement is particularly relevant to confirm this conflict of interest. Citing several cases to this effect, Defendant claims that the presence of a hostile third party, having interests antagonistic to the class, can prove the inadequacy of the named Plaintiffs. For example, in a class action against a New York Teamsters local, the fact that several named plaintiffs belonged to a rival union demonstrated their inadequacy. *Kamean v. Local 363, Int'l Brotherhood of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986). In another class action against a real estate developer, the named plaintiffs failed a challenge to adequacy on the basis that a rival developer had financed the litigation and stipulated settlement terms in advance. *McQuillan v. Engelman*, No. X06CV 990153482S, 2000 WL 226375 (Conn. Super. Ct. Feb. 10, 2000).

10

Applying the reasoning of those cases, Defendant has correctly identified how a conflict of interest can ultimately affect the adequacy analysis.  But Defendant has failed to demonstrate how the Fee Sharing Agreement itself would prove that this conflict exists.  Certainly, if the leasing companies have a pronounced role in this litigation, they potentially could pursue an agenda at odds with the class.  But understanding how Plaintiffs' counsel splits fees with Mr. Sarfaty, without more, is irrelevant to proving who is actually "driving" this litigation.  The Fee Sharing Agreement only involves Plaintiffs' counsel and Mr. Sarfaty.  So it would not divulge the direct involvement of the leasing companies (as in *Kamean*).  And it also would not offer any information on who has financed this litigation (as in *McQuillan*).

Even more important, Defendant has other, better discovery mechanisms available to probe the alleged conflict.  Ultimately, Defendant wants to know "how the named Plaintiffs were recruited for this litigation, and the role of . . . the leasing companies themselves." (Doc. 94-3 at 2).  Defendant may forward that line of inquiry by deposing the named Plaintiffs themselves, or, if necessary, the leasing companies.

At base, Defendant has not met its burden to compel production.  And at this point in the litigation, there are other available methods to obtain the information sought—like depositions.  The Court recognizes that, after additional discovery, Defendant may further develop evidence of a conflict of interest.  The Court may therefore reconsider Defendant's motion if it later becomes clear that the Fee Sharing Agreement is particularly relevant to identifying or proving such a conflict.  At this stage, however, Defendant's Motion to Compel (Doc. 93) is **DENIED without prejudice**.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion (Doc. 87) is **GRANTED**, and Defendant's Motion (Doc. 93) is **DENIED without prejudice**.  Defendant Allegiance is **ORDERED** to produce the at-issue class data to Plaintiffs within **twenty-one (21) days** of the date of this Order.


IT IS SO ORDERED.


Date:  February 3, 2022                      /s/ Kimberly A. Jolson
                                             KIMBERLY A. JOLSON
                                             UNITED STATES MAGISTRATE JUDGE