IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHMUEL COHEN ET AL., | |
| Plaintiffs, | Case No. 2:20-CV-3411 |
| v. | Judge Graham |
| ALLEGIANCE ADMINISTRATORS, LLC ET AL., | Magistrate Judge Jolson |
| Defendants. | |

### OPINION AND ORDER

Plaintiffs Shmuel Cohen, Yehuda Fischer, Eliezer Rosenberger, and Mayer Tannenbaum ("Plaintiffs") are residents of New York who bring this putative class action asserting breach of contract and violations of New York General Business Law ("NYGBL"). Named as defendants are Allegiance Administrator, LLC d/b/a Performance First ("Performance First"), an Ohio limited liability company, and Autoguard Advantage Corporation ("Autoguard"), an Ohio corporation. This action is before the Court on Performance First's motion to dismiss and motion to strike class allegations, Doc. 47; Autoguard's motion to dismiss and motion to strike class allegations, Doc. 69; and Performance First's objections to the Magistrate Judge's February 3, 2022 opinion and order, Doc. 101. For the reasons stated below, Performance First's motion, Doc. 47, is denied; Autoguard's motion, Doc. 69, is granted in part; and Performance First's objections to the Magistrate Judge's opinion and order are overruled.

### I.  Background

#### A. Factual Background

The excitement of leasing a vehicle can be muted by the accompanying responsibility and obligations. Savvy lessees are cognizant that upon completion of the lease they may be faced with

1

unexpected charges, such as driving more than the allotted miles or damage to the vehicle in excess or normal wear and tear. One way to offset these charges is to purchase plans limiting a lessee's responsibility for excessive wear and tear.

This is exactly what the Plaintiffs in the case at bar did. Upon leasing their respective vehicles, they each entered into identical Excess Wear and Tear Protection Waivers (the "Waiver") with Performance First. Doc. 52-1 at 4-5. Pursuant to the Waiver, the Administrator "will waive or reimburse You for charges defined as Excess Wear and Tear in Your Contract that exists at the time You turn in Your vehicle up to a maximum of five thousand dollars ($5,000) . . . ." Doc. 47-1 at 2.

The Terms and Conditions attached to the Waiver lists several exclusions to what is covered. Doc. 47-1 at 3. One of these exclusions is for repairs of damage that would be covered by a standard automobile policy unless the cost of repairs is less than the maximum single event limit specified in the Waiver. Doc. 47-1 at 3. The Terms and Conditions defines a standard automobile policy as "a standard form of automobile insurance policy that provides comprehensive coverage (which includes fire, theft, flood, windstorm and hail) and collision coverage at minimum." Doc. 47-1 at 3.

The Waiver also assures lessees that performance is insured by Lloyd's Underwriting Syndicate Number 5820. Doc. 47-1 at 2. It instructs Lessees to file a Claim with Lloyd's Underwriting Syndicate if the Waiver is denied or not honored. Doc. 47-1 at 2.

Plaintiffs discovered the Waiver was too good to be true. For example, Plaintiff Smhuel Cohen leased a Nissan Sentra for twenty-four months. Doc. 52-1 at 11. He paid $500 to Defendants for the Waiver. Doc. 52-1 at 11. Upon completion of the lease, he was charged $168 for excess wear and tear. Doc. 52-1 at 11. He submitted a claim to Defendants pursuant to the Waiver. Doc.

2

52-1 at 11. Defendants denied the claim because the excess wear and tear charge was for a scratch greater than twelve inches in length. Doc. 52-1 at 11. Plaintiffs Yehuda Fischer, Eliezer Rosenberger, and Mayer Tannenbaum all similarly experienced Defendants denying a portion of their claims under the Waiver for the stated reason that the damage was greater than twelve inches in length. Doc. 52-1 at 8-10. Damage greater than twelve inches in length is not listed as an exclusion under the Terms and Conditions.

Plaintiffs assert that Defendants have a "policy and practice to deny eligible claims for reasons other than a term or condition found in the Waiver Agreement." Doc. 52-1 at 7. For example, Plaintiffs allege that Defendants deny claims for scratches over twelve inches in length and dents over four inches in diameter. Doc. 45 at 7-8. Plaintiffs also assert that Defendants' performance under the Waiver is not guaranteed by Lloyd's underwriting Syndicate. Doc. 45 at 7.

### B. Procedural Background

Following two rounds of briefing on motions to dismiss, Plaintiff filed their second amended class action complaint with corrected caption on May 17, 2021. Doc. 52. Plaintiffs bring in their second amended complaint three claims on behalf of one class and one subclass pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). The class, called the Nationwide Class, is:

> Each person who entered into an Excess Wear & Tear Protection Waiver with Defendants to provide coverage for a leased vehicle and who (a) submitted at least one eligible claim for coverage under the Waiver Agreement and (b) was denied coverage for a stated reason set forth in Defendants' claims report (or other substantively similar document) that is not a grounds for non-coverage under the terms and conditions set forth in the Waiver Agreement.

Doc. 52-1 at 11-12. The subclass, called the NYGBL subclass is "[e]ach person who, in addition to meeting all of the criteria for membership in the Nationwide Class, entered into a Waiver Agreement in connection with leasing an automobile in the State of New York. Doc. 52-1 at 12.

In Count I Plaintiffs allege on behalf of themselves and the Nationwide Class that Defendants breached the Waiver by "wrongfully refus[ing] to honor its contractual obligations based on reasons other than 'terms and conditions set forth' in the Waiver Agreement." Doc. 45 at 15-16. In Count II Plaintiffs allege on behalf of themselves and the NYGBL subclass that Defendants engaged in deceptive acts in violation of NYGBL § 349. Doc. 52-1 at 16-17. Finally, in Count III Plaintiffs allege on behalf of themselves and the NYGBL subclass that Defendants engaged in unlawful false advertising in violation of NYGBL § 350. Doc. 52-1 at 17-18.

Performance First filed a motion to dismiss and motion to strike class allegations on April 22, 2021. Doc. 47. Autoguard followed suit, filling its motion to dismiss and motion to strike class actions on August 2, 2021. Doc. 69.

## II. Motions to Dismiss

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a claim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted).

### B. Analysis

Performance First moves to dismiss Claim I and Autoguard moves to dismiss Claims II and III.

4

1.  **Breach of Contract**

The first issue this Court must address is which state's breach of contract laws applies to the case at bar. Generally, due process requires courts to engage in an individualized choice-of-law analysis for each plaintiff in a nationwide class action. *O'Bryan v. Holy See*, 556 F.3d 361, 381 n.8 (6th Cir. 2009) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822-23 (1985)). But the Sixth Circuit has found that this individualized choice-of-law analysis is necessary only after the class seeks certification. *Id.* Prior to that, courts are to "focus on the application of the forum's choice of law rules to the named plaintiffs." *Id.* (citation omitted). A federal court sitting in diversity, as is the case here, applies the choice-of-law rules of the state in which it sits. *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir.1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Accordingly, the Court looks to Ohio's choice-of-law rules.

Ohio follows the Restatement (Second) of Conflicts of Laws for choice-of-law determinations in contract disputes. *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 714-15 (6th Cir. 2015) (citing *Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206, 220 (Ohio 2001)). The Restatement calls for the application of the laws of the state which "has the most significant relationship to the transaction and the parties . . . ." Restatement (Second) of Conflicts of Laws § 188(1). The contacts considered include the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* at § 188(2).

The Court concludes for purposes of the pending motions that the breach of contract laws of New York apply. Plaintiffs are residents of New York who entered into the Waiver in New

5

York as part of a lease transaction consummated in New York. The only connection to any other state obvious from the second amended complaint is that Defendants are Ohio-based companies.

Under New York law, the elements of breach of contract are: "(1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party, and (4) damages attributable to the breach." *Kramer v. N.Y.C. Bd. of Educ.*, 715 F.Supp.2d 335, 356 (E.D.N.Y.2010) (quoting *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 Fed.Appx. 349, 350–51 (2d Cir.2005)). Contractual privity between the parties is required. *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013) (citation omitted).

Performance First moves for dismissal arguing that it is not a party to the waiver agreement, therefore there is no contractual privity between it and Plaintiffs. Doc. 47 at 6. Plaintiffs argue that Performance First is a party to the Waiver and argue that even if it had not been, it became a contracting party by acting as one. Doc. 57 at 6-8.

The Court begins its analysis by looking at Plaintiffs' second amended complaint. Plaintiffs allege that they entered into the Waiver with Performance First. Doc. 52-1 at 4-5. This factual allegation must be accepted as true for purposes of the motions to dismiss unless "a written instrument plainly contradicts the pleadings . . . ." *Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x 526, 531 (6th Cir. 2016) (internal quotation and citation omitted).

The Waiver[1] does not plainly contradict the pleadings. The Waiver states that it is "entered between You ('You', 'Your' or 'Purchaser') and the Administrator ('We', 'Us', or 'Our') that

---

[1] Performance First attached the Plaintiffs' Waivers to their response brief. The Court may consider the Waivers because the documents are referred to in the complaint and are central to Plaintiffs' claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). Plaintiffs do not dispute the authenticity of these Waivers.

executes this Waiver on the signatory line below or their assignee." Doc. 47-1 at 2. The signatory line does not indicate on whose behalf the signature was made. *See* Doc. 47-1 at 2.

Nor does the Waiver otherwise identify "the Administrator." The bottom of the Waiver does state "[a]dministrated by: Autoguard Advantage Corporation . . . ." Doc. 47-1 at 2. But there is reason to believe that Autoguard, while being responsible for administering the Waiver, is not "the Administrator." The Terms and Conditions instruct a claimant to "please contact Our claims administrator . . . ." Doc. 47-1 at 3. Applying the Waiver's definition of "Our," it instructs claimants to contact the Administrator's claims administrator. From this a reasonable inference can be drawn that Autoguard is not the Administrator, but is merely acting on behalf of the Administrator in handling claims brought under the Waiver.

So, who is the Administrator? The Waiver does suggest that Performance First may be involved. The top of the Waiver has the words "Performance First" and the bottom of the Waiver and Terms and Conditions contain the following line: "LOL/Performance First/Excess W & T/04 4/2016."

Regardless, the Court does not now need to definitively identify the Administrator. It is enough that Plaintiffs allege Performance First entered into the Waiver and that the Waiver does not plainly contradict this allegation. Defendants have therefore failed to meet their burden of showing that Plaintiffs' breach of contract claim fails as a matter of law.

**2. NYGBL Claims**

Plaintiffs bring claims under NYGBL §§ 349 and 350. NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce . . . ." NYGBL § 350 similarly prohibits "[f]alse advertising in the conduct of any business, trade or commerce . . . ." Except for § 350 being specific to false advertising, the elements for both prohibitions are the

same: (1) that the challenged transaction was consumer-oriented; (2) that defendant engaged in deceptive or materially misleading acts or practices; and (3) that plaintiff was injured by reason of defendant's deception or misleading conduct. *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 395-96 (N.Y. App. Div. 1st Dep't 2010) (citation omitted). The acts or practices must be "'misleading in a material respect separate and apart' from the allegations of breach of contract." *Cheng v. HSBC Bank United States*, 511 F. Supp. 3d 248, 255 (E.D.N.Y. 2021) (quoting *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 642 (S.D.N.Y. 2020)).

Autoguard moves to dismiss Plaintiffs' NYGBL §§ 349 and 350 claims on the basis that they are duplicative of the breach of contract claim. Doc. 69 at 5. Autoguard further moves to dismiss Plaintiffs' NYGBL § 350 claim for the additional reason that Plaintiffs do not allege the existence of an advertisement. Doc. 69 at 3.

Facially, Plaintiffs allege only that Defendants entered into the Waiver with no intention of honoring it. Plaintiffs assert that Defendants engaged is misleading and deceptive conduct by:

a. Falsely stating to consumers that Defendants would bear responsibility for excess wear and tear charges imposed by a lessor, subject only to the "terms and conditions set forth" in the Waiver Agreement;

b. Maintaining a policy and practice of denying eligible claims for reasons not listed in the Waiver Agreement, *i.e.* of imposing additional material exclusions, reservations, limitations, modifications, or conditions; seeking to evade its obligations under the Waiver Agreement;

c. Failing to properly disclose to consumers prior to consummation of the Waiver Agreement their policy and practice of imposing numerous material exclusions, reservations, limitations, modifications, or conditions that it applies in determining whether vehicle damage is covered under the Waiver Agreement; and

d. Representing that the Waiver Agreement has the sponsorship or approval of the Lloyd's Underwriting Syndicate when, upon information and belief, that is not true.

Doc. 52-1 at 16-17. With regards to the NYGBL false advertising claim, Plaintiffs allege that "[e]ach of the deceptive and misleading statements in the Waiver Agreement described in the instant Complaint constitute false adverting under NYGBL § 350. Doc. 45 at 18.

Plaintiffs argue that this is enough; that it is well-settled law that a NYGBL §§ 349 and 350 claim can be established where defendants market insurance they do not intend to provide. Doc. 76 at 9-10. Courts have held that "[m]arketing insurance that an insurer does not intend to provide may be deceptive within the meaning of § 349." *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 535 F. Supp. 3d 152, 163 (W.D.N.Y. 2021) (citation omitted). But key to this concept is that deceptive *marketing* was alleged. For example, in *Kim-Chee* the plaintiffs alleged that the defendants expressly made misrepresentations in marketing an insurance policy. *Id.* Plaintiffs make no such allegations in the case at bar. Plaintiffs allege only that Defendants' contractual promises were false or deceptive.

Here, Plaintiffs executed the Waiver knowing the contractual guarantees to which they were entitled. If Defendants fell short on honoring those contractual guarantees for whatever reason, including if they never intended to honor the guarantees, the proper recourse is through a breach of contract claim. *See Ji Dong Cheng v. HSBC Bank USA, N.A.*, 511 F. Supp. 3d 248, 255 (E.D.N.Y. 2021) ("If a plaintiff does not allege that a defendant concealed or misrepresented any contractual terms, but merely complains of a defendant's failure to satisfy its contractual duties, a § 349 claim should generally be dismissed.").

Therefore, the Court concludes that Plaintiffs' NYGBL claims, Claims II and III, fail as a matter of law. The Court does not reach Autoguard's alternative argument for dismissing Plaintiffs' NYGBL § 350 claim.

### III. Motions to Strike Class Allegations

#### A. Standard of Review

A court may strike class allegations prior to discovery "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-CV-36, 2016 WL 25979, at *2 (S.D. Ohio Jan. 4, 2016) (quoting *Loreto v. Procter & Gamble Co.*, No. 1:09-CV-815, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013)). There must be "no proffered or potential factual developments" which could cause the class to be appropriate for class treatment. *Id.* (quoting *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)). The moving party has the burden of showing that it will be impossible to certify the class as alleged in the complaint. *Healey v. Jefferson Cty. Ky. Louisville Metro Gov't*, Civil Action No. 3:17-cv-71, 2018 WL 1542142, at *2 (W.D. Ky. Mar. 28, 2018).

#### B. Analysis

Plaintiffs assert the putative class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). Four prerequisites must be met to establish a class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a)(1)-(4).

Performance First moves to strike the class allegations asserting that (1) the putative class is not ascertainable, (2) the class definition does not satisfy the requirements of commonality and typicality, and (3) the Plaintiffs do not adequately represent the interests of the entire class. Doc. 47 at 8-17. Autoguard adds that the class allegations should be stricken with prejudice because "the defects of Plaintiff's proposed class cannot be cured." Doc. 69 at 7.

### 1. Ascertainable Class

Although not explicitly stated in Rule 23, the Sixth Circuit has found that a "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of a proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)). This applies only to Rule 23(b)(2) classes. *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016). The class must be defined by "objective criteria" that "are not necessarily determinative of the ultimate issue of liability." *Young*, 693 F.3d at 538-39.

Implicit in this requirement is the prohibition of fail-safe classes. *See id.* at 538. A fail-safe class is a class that "cannot be defined until the case is resolved on its merits." *Id.* (citation omitted). In other words, "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, are not bound by the judgement." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (citation omitted).

The nationwide putative class here is:

> Each person who entered into an Excess Wear & Tear Protection Waiver with Defendants to provide coverage for a leased vehicle and who (a) submitted at least one eligible claim for coverage under the Waiver Agreement and (b) was denied coverage for a stated reason set forth in Defendants' claims report (or other substantively similar document) that is not a grounds [sic] for non-coverage under the terms and conditions set forth in the Waiver Agreement.

Doc. 52-1 at 11-12.

Defendants interpret the above class definition as consisting only of "those that were denied coverage contrary to the terms of the Waiver Agreement, i.e. in breach of the Waiver Agreement." Doc. 47 at 13. This, they posit, is impermissible because it requires resolution of the ultimate

11

question – Defendants' liability as to each individual class member – prior to ascertaining the class. Doc. 47 at 13.

Defendants' argument fails because their interpretation of Plaintiffs' class definition is too narrow. Plaintiffs propose a class of individuals whose claims were denied for a stated reason that is not explicitly included as an exception for coverage in the Terms and Condition. This class definition is based on objective criteria – whether the reason written on a claims report or similar document is, word-for-word, included as a basis for noncoverage in the Terms and Conditions. And the definition is not determinative of the ultimate issue of liability or create a fail-safe claim. It may be that a claim was denied for a stated reason which appears inconsistent with the Waiver, but that discovery will reveal Defendants considered and denied the claim consistent with the Waiver.

Therefore, Performance First failed to show that the class is unascertainable on the face of the complaint.

### 2. Commonality and Typicality

Federal Rule of Civil Procedure 23(a)(2) requires that there are questions of law or fact common to the class. Commonality requires that a connection be "of such a nature that it is capable of classwide resolution – which means that determination of the truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality does not require that the class have only common questions – the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 U.S. Dist. LEXIS 108072, at *10 (E.D. Mich. May 31, 2020) (quoting *Sterling v.*

*Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). Where a general policy which allegedly affected a class is the focus of the litigation, the commonality requirement is satisfied. *Intercommunity Just. & Peace Ctr. v. Registrar, Ohio Bureau of Motor Vehicles*, 440 F. Supp. 3d 877, 888 (S.D. Ohio 2020) (quoting *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003).

Federal Rule of Civil Procedure 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claim or defenses of the class." To be typical, a claim must "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.01, at 3–4 (3d ed. 1992)). "[T]he named plaintiff's claims do not have to be identical to the claims and defenses of the other members of the putative class or involve the same facts or law, provided there is a common element of fact or law." *Intercommunity Just. & Peace Ctr.*, 440 F. Supp. 3d at 889 (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). The threshold for typicality is low. *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) (citation omitted). "In instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 645 (S.D. Ohio 2017) (quoting *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1035 (N.D. Miss. 1993).

It is premature for the Court to decide whether Plaintiffs satisfy the commonality and typicality requirements. A key component to the proposed class definition is that a claim "was denied coverage for a stated reason set forth in Defendants' claims report (or other substantively

similar document) that is not a ground[] for non-coverage under the terms and conditions set forth in the Waiver Agreement." Doc. 52-1 at 11-12. Plaintiffs' theory is that Defendants have a policy by which they deny claims for reasons other than those listed in the Terms and Conditions. Without knowing the array of reasons for which claims were denied and Plaintiffs' explanation of how those reasons fit into a policy, the Court cannot decide whether Plaintiffs' claims present common questions of law or fact or whether their claims or defenses are typical of the class. And Defendants have failed to show that it is impossible that Plaintiffs will be able to satisfy the commonality and typically requirements.

### 3. Adequate Representation

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. This requirement has two prongs: "1) the representative must have common interests with the unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543 (citation omitted).

Defendants assert that "[f]or the same reasons that the proposed class action fails the commonality and typicality requirements, the named Plaintiffs are not and cannot be adequate representatives of the entire class . . . ." Doc. 47 at 17. This too is premature. The Court cannot evaluate whether Plaintiffs are an adequate representative of the class until the makeup of the class is better defined, which cannot be done until the policy Defendants allegedly relied on in denying claims is fleshed out.

### IV. Objections

While the motions to dismiss and strike class allegations were pending, discovery progressed with the assistance of the assigned Magistrate Judge. A topic of frequent contention

14

was access to denied claims information. Performance First maintains a database containing claims information. The database contains approximately 10,000 claims. Plaintiff sought discovery of the claims denied during the class period and which were denied for reasons other than those listed in the Terms and Conditions. Performance First ran the requested search and found 2,525 applicable claims, but refused to produce them. Performance First explained that its database retains descriptions of damage, not rationales for denials using the language in the Terms and Conditions. Therefore, it asserts, the search methodology Plaintiffs suggest produces essentially all claims that were denied during the class period. Doc. 87-3 at 3-7. Defendants offered that it could search the database for the terms "scratch" and "12", "given that Plaintiffs could represent a class of similarly-situated claimants whose claims were denied for scratches longer than 12 inches." Doc. 87-3 at 4. Plaintiff declined, asserting that Performance First's suggestion was far narrower than the putative class definition.

This dispute came to a head on December 15, 2021, when Plaintiff filed a motion to compel production. Doc. 87. Following briefing, the Magistrate Judge granted Plaintiff's motion. Doc. 100. She found that:

> The claims denials returned by Plaintiffs' search methodology are clearly relevant to the class claims. Any claims denied during the relevant time period may have been denied for reasons not enumerated in the Waiver Agreement and may therefore support Plaintiffs' class allegations. And Plaintiffs, through their suggested exclusionary language, made an attempt to eliminate those claims which clearly do not fall into that category. While the claims could have been further narrowed by a better designed search mythology, Defendants did not make use of its superior knowledge of the database to meaningfully suggest search terms which would narrow the discovery while still retrieving as many of the relevant documents as possible.

Doc. 100 at 6. She further found that production of the denied claims would not be unduly burdensome for Performance First. Doc. 100 at 6. Performance First timely filed objections to the Magistrate Judge's opinion and order. Doc. 101.

15

**A. Standard of Review**

Upon receiving timely objections to a magistrate judge's non-dispositive pretrial order, the court is to "set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to factual findings and the "contrary to law" standard applies to legal conclusions. *King v. Banks*, No. 2:10-CV-852, 2010 WL 4384248, at *1 (S.D. Ohio Oct. 28, 2010).

**B. Analysis**

Performance First brings three objections to the Magistrate Judge's opinion and order: (1) that the Magistrate Judge erred in finding that Plaintiff's search methodology resulted in production of relevant data; (2) that the Magistrate Judge erred by "imposing the burden on [Performance First] to solve an unsolvable discovery problem created by Plaintiffs' unascertainable class definition; and (3) that the Magistrate Judge erred by relying on Plaintiff's objectively undefinable class to justify discovery of claim denial data. *See generally* Doc. 101.

None of these arguments hold water. The Magistrate Judge's conclusion that denied claims data is relevant is not clearly erroneous considering Plaintiffs' class claims are premised on claims being denied in breach of the Waiver. And Performance First's second and third arguments are defeated by the conclusion in this opinion that Plaintiffs' class definition is objectively ascertainable.

Underlying Performance First's objections is the concern that discovery of its claim denial data is overbroad. As explained above, Performance First records descriptions of the damage for which it denies coverage. It does not record an explanation for denial using the language in the Terms and Conditions. Therefore, when it performed the search using Plaintiffs' search methodology, only five claims denied within the class period were excluded. But this does not

16

render discovery improper. Plaintiffs are unable, prior to discovery, to ascertain every physical description which Defendants may use to deny claims. The best they can do, with the information they possess, is attempt to narrow discovery by claims that were denied using the language of the Terms and Conditions. That Performance First does not record the denials in this way should not render Plaintiffs unable to engage in class discovery.

## V.     Conclusion

For the above reasons, Performance First's motion to dismiss and strike class allegations, Docs. 47, is denied; Autoguard's motion to dismiss and strike class allegations, Doc. 69 is granted in part; and Performance First's objections to the Magistrate Judge's February 3, 2022 opinion and order, Doc. 101, are overruled.

**IT IS SO ORDERED**.

        s/ James L. Graham
        JAMES L. GRAHAM
        United States District Judge

DATE: April 15, 2022