#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF OHIO
#### EASTERN DIVISION

| | |
|---|---|
| **SHMUEL COHEN ET AL.,** | |
| Plaintiffs, | **Case No. 2:20-CV-3411** |
| v. | **Judge Graham** |
| **ALLEGIANCE ADMINISTRATORS, LLC ET AL.,** | **Magistrate Judge Jolson** |
| Defendants. | |

### OPINION AND ORDER

This matter is before the Court on Defendant Allegiance Administrators, LLC's motion for summary judgment, Doc. 137.[1]

### I.  Background

#### A. Factual Background

Plaintiffs Shmuel Cohen, Yehuda Fischer, Eliezer Rosenberger, and Mayer Tannenbaum[2] allege that Defendants Allegiance Administrators, LLC and Autoguard Advantage Corporation systematically breached the terms of Excess Wear and Tear Protection Waivers (the "Waiver"). The Waiver, which was offered when individuals leased vehicles, promised to "waive[] excess wear and tear charges subject to the terms and conditions . . . ." *See* Doc. 137-1 at 6. A document attached to the Waiver and titled Terms and Conditions lists specific exclusions to which the Waiver does not apply. *Id.* at 7. Plaintiffs allege that they and others entered into the Waiver and submitted claims which were denied for reasons other than those listed as exclusions.

Defendants are part of an interconnected web of companies involved in the insurance industry. At the center of this web is businessman Haytham ElZayn. Defendant Autoguard Advantage is a holding company. *See* DeFouw Dep. 119:21-23, Doc. 143-5. It holds long-term restricted assets which are used to pay insurance claims and cancellations. *Id.* at 119:21-23. It has

---

[1] Allegiance Administrators changed its name to Renascent Protection Solutions, LLC effective September 28, 2022. Biglin Decl. at ¶ 7, Doc. 137-1 at 1-5. For consistency, the Court will continue to refer to Renascent Protection Solutions, LLC as Allegiance Administrators.

[2] Mayer Tannenbaum dismissed her claims with prejudice on April 11, 2023. Doc. 133.

1

no corporate facilities or employees. *Id.* at 16:3-8; 97:16-17; 140:19-141:7. It is wholly owned by its parent company, Dimension Service Corporation. *Id.* at 15:24-16:2; 35:6-11; 45:4-8; 139:13-16.

Dimension Service Corporation provided administrative and sales services for Autoguard Advantage until 2018. *Id.* at 26:19-37:14. It served as claims adjuster for all contracts identifying Autoguard Advantage as the administrator. *Id.* It is wholly owned by Allegiance Holdings, LLC, which is wholly owned by Mr. ElZayn. *Id.* at 139:13-22. Mr. ElZayn was also president and/or CEO of Dimension. *Id.* at 44:20-22.

Defendant Allegiance Administrators was created by Dealer VSC, Ltd., another of Mr. ElZayn's companies, and Tricor Automotive Group US, Inc. ("TAG"), an unrelated player in the insurance industry. These companies created Allegiance Administrators to "combin[e] their existing vehicle service contract businesses . . . ." Doc. 144-1 at 2.

Both Dealer and TAG made contributions into Allegiance Administrators. Doc. 114-1 at 4. Dealer contributed, among other things, "100% of its assets related to the Assurant Business . . . . all employees related to the Assurant Business, and IT platforms involved in servicing those specific contracts . . . ." *Id.* The "Assurant Business" is defined as "vehicle service contracts insured by Assurant Inc. or its related entities . . . ." *Id.* at 2; Biglin Decl. at ¶ 9. The Waiver at issue here was insured by Lloyd's Underwriting Syndicate Number 5820, not Assurant Inc., and so was excluded from the conveyance.

All of Dimension's employees in the vehicle service contract line of business were moved to Allegiance Administrators, including the sales and claim adjustment teams. Defouw Dep. 41:8-16, Doc. 143-5. Dimension retained no claim adjusters. *Id.* at 76:17-23. Allegiance Administrators administered the Waivers in Dimension's place from 2018 to March 2020. Biglin Decl. at ¶¶ 15, 18, 19, and 21.

In working with TAG to form Allegiance Administrators, Mr. ElZayn agreed to a covenant not to compete, which provided in relevant part that for three years from the termination of his employment he cannot:

> Own, operate, invest in, affiliate with, employ, or serve as a consultant or independent contractor to any person or entity engaged in the business of marketing, selling, or administering vehicle service contracts, warranties, related programs, or any Ancillary Products to retail customers specifically through automobile dealerships.

2

Doc. 144-1 at 82.

The ownership of Allegiance Administrators was originally 51% Dealer and 49% TAG. Dealer's ownership diminished since then. In 2019, Dealer's interest was down to 45%; then 9% in 2020; and 0% in 2021. Biglin Dec. ¶ 8.

**B. Procedural Background**

Plaintiffs' operative complaint contains three causes of action: breach of contract, violations of New York State General Business Law § 349, and violations of New York State General Business Law § 350. *See generally* Second Amnd. Compl., Doc. 45. The Court dismissed the New York State General Business Law claims. Doc. 110 (dismissing claims against Autoguard Advantage); Doc. 122 (dismissing claims against Allegiance Administrators). Allegiance Administrators additionally moved for the dismissal of the breach of contract claim, arguing it could not be liable for a breach because it was not a party to the Waiver. Doc. 47 at 6. The Court declined to dismiss the claim, concluding Plaintiffs adequately alleged Allegiance Administrators was a party to the Waiver and that the Waiver does not plainly contradict that allegation. Doc. 110 at 7.

Allegiance Administrators now moves for summary judgment on the breach of contract claim again arguing that it is not a party to the waiver. Plaintiffs oppose summary judgment, but no longer assert that Allegiance Administrators was originally a party to the contract. Instead, it now argues that principles of successor liability render Allegiance Administrators liable for breach of the Waiver.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of showing the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III. Analysis

Plaintiffs' newly presented successor liability theory presents three issues: (A) which state's successor liability laws apply, (B) whether Plaintiffs' theory is procedurally defaulted, and (C) whether Plaintiffs' theory has merit.

#### A. Choice of Law

A federal court sitting in diversity applies the choice of law principles of the forum state. *Wiggins v. Bank of Am., N. Am.*, 488 F. Supp. 3d 611, 634 (S.D. Ohio 2020); *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016). In Ohio, a conflict is required before engaging in the choice of law discussion. *Kirby Devs. LLC v. XPO Glob. Forwarding, Inc.*, No. 2:18-CV-500, 2021 WL 4125457, at *12 (S.D. Ohio Sept. 9, 2021) (citing *Akro-Plastics v. Drake Indus.*, 685 N.E.2d 246, 248 (11th Dist. 1996). The party seeking application of a foreign law bears

4

the burden of establishing the conflict. *Id.* If it fails to sustain its burden, Ohio law applies. *Id.* (citing *Gouge v. BAX Global, Inc.*, 252 F. Supp. 2d 509, 521 (N.D. Ohio 2003).

Plaintiffs ask that the Court apply New York law but fails to identify a conflict between that and Ohio law. *See* Doc. 143 at 9-10. Because Plaintiffs have failed to meet its burden of establishing a conflict, the Court is required to apply Ohio law.[3]

**B. Procedural Default**

Allegiance Administrators asks that the Court not reach the merits of Plaintiffs' successor liability theory because it is procedurally defaulted. Generally, a plaintiff cannot defeat summary judgment by raising a new claim in its response brief. *Tucker v. Union of Needletrades, et al.*, 407 F.3d 784, 788 (6th Cir. 2005). To permit otherwise would subject the defendant to unfair surprise and deprive the defendant of the opportunity to investigate and conduct discovery on the newly raised claim. *Id.* Rather, a plaintiff seeking to rely on a new claim must amend their complaint in accordance with Federal Rule of Civil Procedure 15.

This Court has permitted a plaintiff to raise successor liability in response to summary judgment despite not raising it previously where the defendant anticipated it would be raised. *Clark v. Shop24 Glob., LLC*, 77 F. Supp. 3d 660, 691 (S.D. Ohio 2015). That is the case here. In its motion for summary judgment, before Plaintiffs breathed a word about successor liability, Allegiance Administrators argued that "[t]he evidence is equally clear that Allegiance Administrators never assumed the obligations under the Waiver Agreement . . . [despite that] a certain line of products owned by Autoguard's affiliated entities was contributed to Allegiance Administrators as part of its formation . . . ." Doc. 137 at 10. Why would Allegiance Administrators speak of it assuming the obligations of other entities if it did not anticipate Plaintiffs would raise successor liability? The Court therefore finds that Allegiance Administrators anticipated Plaintiffs' successor liability theory, was not subject to unfair surprise, and cannot rely on procedural default.

---

[3] The Court preliminarily found in its Opinion and Order denying Defendants' motions to dismiss that New York law applies to Plaintiffs' breach of contract claim. Doc. 110 at 5-6. This finding does not inform what law applies to the successor liability issue within the breach of contract claim. The Restatement (Second) of Conflicts of Laws, which Ohio has adopted, incorporates the doctrine of depecage. *See C.B. Fleet Co. v. Colony Specialty Ins. Co.*, No. 1:11-CV-0375, 2013 WL 1908098, at *6 (N.D. Ohio May 7, 2013). The doctrine of depecage, as applied in Ohio, permits issues within a single claim to be governed by different laws. *See Est. of Sample through Cornish v. Xenos Christian Fellowship, Inc.*, 139 N.E.3d 978, 986 (Ohio Ct. App. 10th Dist. 2019) (applying depecage to consider the application of different law to the issue of contributory fault).

### C. Merits of Successor Liability Theory

Plaintiffs present a two-part successor liability theory. First, Plaintiffs believe that Dimension is liable for breachs of the Waiver because it was either a party to the Waiver or is responsible for the actions of its subsidiary, Autoguard Advantage, which is a party to the Waiver. Second, Plaintiffs assert that Dimension's liability is imputed to Allegiance Administrators because the creation of Allegiance Administrators effectively rendered Dimension defunct, making Allegiance Administrators its successor. Both parts of this theory must be true for Allegiance Administrator to be liable for a breach of the Waiver.

The Court begins its analysis with the second part of Plaintiffs' theory – that Allegiance Administrators subsumed Dimension's liabilities as its successor. Generally, a corporation that purchases the assets of another is not liable for the contractual liabilities of the predecessor corporation. *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993). There are four exceptions to this general rule, two of which are relevant here – de facto merger and mere continuation.

"A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Id.* at 1134 (citation omitted). It is a "merger in fact without an official declaration of such." *Id.* The four "hallmarks" of a de facto merger are:

> (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.* No factor is determinative, and a de facto merger may exist even if not all hallmarks are present. *Cytec Indus., Inc. v. B.F. Goodrich Co.*, 196 F. Supp. 2d 644, 658 (S.D. Ohio 2002).

The record does not support that a merger occurred here, de facto or otherwise. Dimension transferred its employees related to the service contract business to Allegiance Administrators as part of its formation. DeFouw Dep. 41:8-21, Doc. 143-5. However, Dimension continued to exist and function as a corporation. It retained employees that performed other functions. DeFouw Dep. 41:25-42:9, Doc. 145-1. As of December 2022, Dimension had 17 employees. DeFouw Dep. 77:2-3, Doc. 143-5. Dimension's continued existence and functioning following the transfer to

Allegiance Administrators forecloses the possibility that it "merged [with Allegiance Administrators] in fact without an official declaration of such."

A mere continuation occurs when "one corporation sells its assets to another corporation with the same people owning both corporations." *Welco*, 617 N.E.2d at 1134. It is when "the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporations." *Id.* The purpose of the sale of assets is frequently to escape liabilities. *Id.* The mere continuation exception does not apply here. Dimension transferred a portion of its assets to Allegiance Administrators. This transfer was not a reincarnation of Dimension. As explained above, Dimension continues to exist today. It was a component of a collaboration between Mr. ElZayn, the owner of Dimension, and TAG in which assets owned by both were combined to create Allegiance Administrators. Mr. ElZayn originally owned 51% of Allegiance Administrators and TAG owned 49%. Today, Mr. ElZayn has no ownership interest in Allegiance Administrators.

## IV. Conclusion

As the undisputed facts establish that Allegiance Administrators cannot be held liable for the alleged breach of the Waivers, its motion for summary judgment, Doc. 137, is **GRANTED**.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: November 15, 2023