IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Shmuel Cohen et al.,**

    Plaintiffs,

  v.

    Case No. 2:20-cv-3411
    Judge James L. Graham
    Magistrate Judge Kimberly A. Jolson

**Allegiance Administrators, LLC et al.,**

    Defendants.

## OPINION AND ORDER

    This matter is before the Court on Plaintiffs' Motion for Class Certification. (ECF No. 138). Plaintiffs Shmuel Cohen, Yehuda Fischer, and Eliezer Rosenberger bring this putative class action to vindicate the contractual rights of themselves and those similarly situated who entered into contracts with Defendants Allegiance Administrators, LLC [1] ("Allegiance") and Autoguard Advantage Corporation ("Autoguard"). Defendant(s) "Extra Wear & Tear Protection Waiver" ("The Waiver") provided reimbursement for excess wear and tear assessments levied by the lessor of a leased vehicle when the lessee turned it in at the end of a lease. The Waiver was meant to insure motor vehicle leaseholders for certain damage, colloquially called excess wear and tear, as specified in the Waiver's terms and conditions.

    Plaintiffs are lessees who purchased such contracts. Plaintiffs allege that Defendant had a policy and practice of denying eligible claims for reasons not justified under the terms and conditions of the contract. Plaintiffs assert that this action qualifies for class action certification because it involves common questions of law and fact and because the claims of class members

---

[1] Allegiance Administrators changed its name to Renascent Protection Solutions, LLC effective September 28, 2022. Biglin Decl. at ¶ 7. For consistence, the Court will continue to refer to Renascent Protection Solutions, LLC as Allegiance Administrators.

can be adjudicated based on the existence of objective facts contained in the claims records. Defendant denies that it had a practice or policy of denying claims based on reasons not justified

---

in the contract and asserts that the re-adjudication of any denied claim would require individual consideration of subjective decisions made by claims adjusters based on the unique facts of each case, rendering this matter inappropriate for a class action.

The Court previously granted Allegiance Administrators's Motion for Summary Judgment (ECF No. 148), thereby leaving Autoguard Advantage Corporation as the sole remaining Defendant in this case. Plaintiffs move for the Court to certify its proposed class and name them as class representatives (ECF No. 138). The Court held an evidentiary hearing and entertained counsel's oral arguments on the legal and factual issues this case presents on August 9, 2024. The motion is fully briefed and ripe for disposition.

## I. Factual Background

The Named Plaintiffs, all New York residents, are lessees who purchased Waivers from defendant, asserted claims thereunder, and allege their claims were improperly denied. They ask the Court to certify their case as a class action under FRCP Rule 23.

Plaintiffs claim this case qualifies as a class action because Defendant has a policy and practice of denying covered claims for reasons unrelated to any exclusion in the policy. They say Defendant specifically identifies the extra contractual reason for its denial in its claims records, which makes it possible to identify a class which is entitled to compensation on an objectively reasonable basis.

For example, Plaintiff Shmuel Cohen leased a Nissan Sentra for twenty-four months. (ECF 52-1 at 11). He paid $500 to Defendants for the Waiver. (ECF 52-1 at 11). Upon completion of the lease, he was charged $168 for excess wear and tear. (ECF 52-1 at 11). He submitted a claim to Defendants pursuant to the Waiver. (ECF 52-1 at 11). Defendants denied the claim because the excess wear and tear charge was for a scratch greater than twelve inches in length and recorded that as the reason for denial in its claims records. (ECF 52-1 at 11). Damage from a scratch more than 12 inches in length is not excluded under the terms and conditions of the Waiver.

Plaintiffs seek to certify a class defined as:

> Each person who entered into an Excess Wear & Tear Protection Waiver with Defendants to provide coverage for a leased vehicle and who (a) submitted at least one

2

eligible claim for coverage under the Waiver Agreement and (b) was denied coverage for a stated reason set forth in Defendants' claims report (or other substantively similar document) that is not a grounds for non-coverage under the terms and conditions set forth in the Waiver Agreement.

(ECF No. 138 at 8.)

## II. Procedural Background

Plaintiffs filed their initial complaint against Defendant Allegiance on July 7, 2020 (ECF No. 1). Then filed an amended complaint on October 9, 2020 (ECF No. 17). Two weeks later, Allegiance filed a motion to dismiss for failure to state a claim and a motion to strike the class allegations (ECF No. 19). On April 13, 2021, Plaintiffs filed a second amended complaint against Allegiance and added Autoguard as a Defendant (ECF No. 45). Allegiance and Autoguard responded by filing a motion to dismiss and a motion to strike the class allegations (ECF No. 47). Plaintiffs were granted leave to file a second amended class action complaint (with Corrected Caption) (ECF No. 52-1). Defendant Autoguard subsequently filed a motion to dismiss and motion to strike the class allegations in the second amended class action complaint (ECF No. 69). This Court denied the motion to dismiss for failure to state a claim (ECF No. 47) and granted in part Autoguard's motion to dismiss (ECF No. 69).

Defendant Allegiance filed for judgment on the pleadings as to Counts II and III of Plaintiffs' second amendment complaint (ECF No. 113) and the Court granted that motion on August 16, 2022. (ECF No. 122). On May 22, 2023, Defendant Allegiance filed a motion for summary judgment. (ECF No. 137). Plaintiffs responded in opposition (ECF No. 143) and Allegiance timely replied. (ECF No. 145). The Court granted Allegiance's motion for summary judgment. (ECF No. 148). Plaintiffs' motion to certify the class (ECF No. 138) is currently pending before the court.

## III. Class Certification Standard of Review

Class certification is governed by Federal Rule of Civil Procedure Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). District courts have broad discretion in certifying class actions but must stay within the framework outlined by Rule 23. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). The Supreme Court has required district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before

3

certifying a class. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Pursuant to Rule 23, a court may certify a class action only if it meets the requirements of Rule 23(a) and one or more of the requirements of Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3). The burden of proof is on the party seeking class certification. *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Under Rule 23(a), the party seeking certification must demonstrate, first, that:

> "(1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(1)-(4). If the plaintiff does not satisfy all four requirements, his class claim fails at the threshold. If, however, the plaintiff shows that she is an appropriate representative within the meaning of Rule 23(a), the focus shifts to the case itself. A plaintiff must demonstrate that the class complies with at least one of the requirements of Rule 23(b). *Id.* Under Rule 23(b), four types of lawsuits may proceed as class actions. Specifically, class resolution is appropriate when:

> "(1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed.R.Civ.P. 23(b)(1)–(3). If the plaintiff's claim does not fall into one of these categories, class certification is inappropriate, even if the plaintiff meets each of Rule 23(a)'s four threshold

4

requirements. In sum, then, a plaintiff must show that he meets all four Rule 23(a) criteria, and that his case falls into at least one of the four Rule 23(b) categories. If he fails to satisfy any of these requirements, class certification is not appropriate.

## IV. Discussion

Plaintiff seeks class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3). The Court will analyze the requirements of Rule 23(a) and Rule 23(b) in turn.

### A. Ascertainability

Although Rule 23 has no express ascertainability requirement, the Sixth Circuit has held that it is implicitly required for class certification. *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). Ascertainability is satisfied when the "class description [is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)). In determining whether a class is ascertainable, the only requirement is "the existence of objective criteria upon which class membership is based." *McNamee v. Nationstar Mortg., LLC*, No. 2:14CV-1948, 2018 WL 1557244, at *4 (S.D. Ohio Mar. 30, 2018) (citing *Young*, 693 F.3d at 538–39). In *McNamee*, another Judge in this District illustrated the ascertainability requirement:

> "To illustrate the difference between ascertainability and susceptibility to individualized inquiry, consider, for example, a class defined as "all people in the State of Ohio who currently have a pint of mint chocolate chip ice cream in the freezer." Such a class is certainly ascertainable: every Ohioan either is a class member, or she is not. The inquiry is an objective one." *Id.*

According to Plaintiffs' definition, the proposed class would consist of "each person who entered into an Excess Wear & Tear Protection Waiver with Defendants… who (a) submitted at least one eligible claim for coverage under the Waiver Agreement and (b) was denied coverage for a stated reason set forth in Defendant's claims report… that is not a ground for noncoverage…" (ECF No. 138 at 3). Plaintiffs further assert that the claims data and discovery from Defendant provides the Court with enough information to ascertain who is included in the proposed class (*Id.* at 13).

The evidence shows that the administration of the assessment of excess wear and tear charges to be paid by a lessee was controlled by the lessor and that the lessor determined the cost of labor,

parts and materials necessary to repair the damage. Records of those determinations were part of the materials submitted to Defendant and were used to determine 1) whether to allow or deny the lessee's claims under the waiver and 2) the amount of the cost of repair. Defendant did not make any independent judgments about the cost of repairs. They relied entirely on the cost of repairs reported by the lessor.

The Excess Wear and Tear Protection Waiver Agreement states that "coverage is available on leases… which include an excess wear and tear provision. In consideration of the additional charge shown above, and subject to the terms and conditions set forth herein, We agree to amend the provisions of Your Contract in accordance with the coverage you have selected." "We will waive or reimburse you for charges defined as excess wear and tear in Your Contract that exists at the time You turn in Your Vehicle up to a maximum of five thousand dollars ($5,000) as indicated by the Coverage Amount selected above. You agree to pay any deductible shown above." Purchasers were given the option to select deductibles in the amount of $0, $100 or $250 and maximum single event limits of $500 or $1,000.

The Waiver Agreement contains twelve specific exclusions, including things like damage that existed prior to the lease (Exclusion 1), damage due to alterations, improper repairs or modifications, (Exclusion 3) and there were contractual limitations on the amount of coverage, such as deductibles and a maximum limit for damages caused by a single occurrence. None of these contractual exclusions and limitations are involved in this case. The definition of the class does not include any claims identified in the Defendant's claims records as having been denied for a reason based upon express exclusions, deductibles, or the single occurrence limit. The defined class includes only claims which were recorded as denied for reasons not contained in the Waiver Agreement.

Plaintiffs' claims fall into two distinct categories: 1) claims denied for the stated reason that the damage was caused by a collision and 2) claims that were denied for the stated reason that they were for scratches or dents in excess of certain dimensions. Plaintiffs claim that there is no contractual basis for the exclusion of a claim for either of those reasons. Plaintiffs have produced clear and convincing evidence that Defendant had a custom and practice of denying claims for both of those reasons, and it is clear from the language of the Waiver Agreements that neither of those grounds for denial was justified under the terms and conditions of the Waiver Agreements.

6

The evidence suggests that the denial of claims for scratches and dents of certain dimensions may have originated from a "rule of thumb" of one or more claim managers that dents and scratches in excess of those diameters were not "wear and tear" or in the case of dents, an advertising brochure which referred to coverage for "dents up to 4 inches in diameter." The evidence indicates that these rules were not uniformly applied, but it is clear that they were often applied to improperly deny claims. The evidence indicates that the practice of denial of claims for damages caused by collisions arose from the claim departments misunderstanding of Exclusion 2 and in particular the exceptions to that exclusion.

Exclusion 2 excludes "any damage that would be covered by… a standard automobile policy… whether or not the there is a policy-in-force…" Any standard automobile policy would of course include coverage for damages caused by collisions with other vehicles or objects and damage caused by theft and vandalism. However, this exception is followed by a very important exception: "unless repair of damage from any single event results in a cost to repair of less than the maximum single event limit you selected." This exception to the exclusion essentially defines the scope of coverage of the protection the lessee is purchasing for excess wear and tear charges imposed by the lessor for physical damage to the exterior of their leased vehicle, things like dents and scratches, which frequently result in excess wear and tear assessments by the lessor when the vehicle is turned in at the end of the lease.

The exception says such assessments will be reimbursed notwithstanding the fact that the damage may be covered by a standard automobile policy "unless repair of damage from any single event results in a cost to repair of less than the Maximum single event limit you selected." Thus, each purchaser of a waiver is entitled to recover up to $500 or $1,000 for damage or excess wear and tear assessed by the lessor, even though the damage was caused by a collision with another vehicle or object.

Plaintiffs argue that the class is ascertainable by examining the claims report of each individual class member. Furthermore, Plaintiffs state that within the claims report, there is evidence of Defendant's practice of denying claims for extra-contractual reasons, specifically for "collision damage" and for scratches and dents greater than 12 and 4 inches respectively.

Defendant argues that Plaintiffs' proposed class is not ascertainable because determination of membership requires a subjective analysis of the stated reason for denial contained in the claims report. Defendant's claims personnel testified that in order to determine the reason for the denial

7

of a claim under the waiver, it would be necessary to review the photographs and measurements contained in the file. Defendant further argues that there is no objective test the Court can apply to determine class membership and that the proposed class fails to "establish definite boundaries of a readily identifiable class."

The Court is not persuaded by Defendant's arguments. The evidence supports a finding that Defendant recorded the reasons for denial of a claim in the section of its claim form entitled "Corrective Action", as well as in other sections of the claim file. The Court further finds that in the Corrective Action section, as well as in other sections of Defendant's records, notations such as "collision", "not wear and tear", "dents 4+ inches" and "scratches 12+ inches" are objective evidence of an improper denial.

> *i. Defendant Had a Policy and Practice of Recording the Reason(s) for Approval/Denial in the Claims Report*

After reviewing the claims reports and deposition testimony, the Court determines that it was Defendants practice and procedure to record the reason for the denial of a claim in the section of the claims report entitled "Corrective Action" and in the section entitled "Component Breakdown." Claims Director Mike Gibson confirmed this during his deposition, stating that the reasons for approval or denial were recorded "in the claim itself under 'corrective action.'" *See*, Deposition Testimony of Mike Gibson (Dec. 2, 2022) at 69-70. Notations in these sections also included the exact dollar amount of the cost of repair for the claim denied. Defendant had a custom and practice of denying claims for reasons not supported by any exclusions in the waiver agreement including wrongful denial of claims for dents or scratches in excess of certain dimensions and claims caused by collisions with other vehicles or objects.

> *ii. The Deposition Testimony of Defendant's Claims Adjuster(s) Confirms the Existence of a "12-Inch Scratch" Rule*

The Court also finds that Defendant had a practice of denying claims for 12-inch scratches and 4-inch dents. During his deposition, claims adjuster Juan Gutierrez stated that his supervisor, Bob Cramer, informed him of a "12-inch scratch rule." *See,* Deposition Testimony of Juan Gutierrez (Oct. 26, 2022) at 66. Gutierrez further clarified this assertion stating that Bob Cramer told him to deny all claims for 12-inch scratches and above "if it was one continuous line." (*Id.* at 94-95). Gutierrez also testified to instructions he received from Allegiance General Counsel Brian Biglin. (*Id.* at 76). Gutierrez confirmed that the letter from Biglin contained the following sentence:

8

"[f]irst, the contract language is in that if damage to the leased vehicle is covered by the leaseholder's automobile insurance policy, then that damage is excluded from coverage and must be handled under the leaseholder's automobile insurance policy." (*Id.*). When asked to recall any of the reasons he denied under the wear and tear agreements, Gutierrez testified that "the tires is [sic] the one that I remember the most. And then scratches over 12 inches." (*Id.* at 77). Additionally, denials for scratches in excess of 12-inches, as well as for dents greater than 4 inches, can be found in the claims reports of the named plaintiffs. *See,* ECF No. 92-2, 92-3 and 92-5. The deposition testimony and claims reports confirm that Defendant denied claims for scratches greater than 12 inches and dents larger than 4 inches, neither of which are listed as grounds for denial in the waiver agreement.

### iii. Deposition Testimony Verifies Defendant's Practice of Denying Claims for Damage Caused by Collision(s)

Lastly, the Court finds that the evidence clearly shows Defendant's practice and policy of denying claims for damage caused by a collision, contrary to the terms of the excess wear and tear agreements. A review of the claims reports confirms that Defendants improperly denied claims for "collision damage" in violation of the waiver agreement. *See*, ECF No. 92-3

The existence of the policy is also supported by the testimony of Defendant's claims adjusters and managers, and by a legal opinion authored by Defendant's General Counsel, who apparently failed to read the exception to exclusion 2. *See*, Deposition Testimony of Brian Biglin (Dec. 6, 2022) at 57-58. One of Defendant's claims adjusters, Matthew Blevins, also testified to Defendant's practice of denying claims for damage caused by collision(s). *See*, Deposition Testimony of Matthew Blevins (Oct. 18, 2022) at 102-103. When asked about the reason for denial of the right front door, Blevins stated "that's [a collision] the only way I know of a dent of that magnitude to happen, two things collide." (*Id.* at 103).

Later in Biglin's deposition, he testifies that the waiver agreement is intended to cover "modest wear and tear incurred during the lease, not significant scratches, scrapes or dents resulting from collisions or impacts with other care or stationary object[s]." (*Id.* at 88-89). This opinion is not supported by any language in the waiver agreements and is a transparent attempt to escape the consequences of the legal opinion rendered without considering the terms of the exception to Exclusion 2. The waiver agreement is clearly intended to cover all assessments made by the lessor for excessive wear and tear. The suggestion that there is an exclusion to the exception for an

9

undefined more serious kind of excess wear and tear is absurd. The waiver agreement clearly covers any and all assessments made by the lessor for excessive wear and tear caused by a collision with other vehicles or objects, regardless of the severity of the damage.

The Court finds that with the possible exception of the single event limit, the only reason Defendant's claims adjuster would have to look at the photos and measurements would be to make a subjective determination of whether the damage was caused by a collision in order to implement the policy to wrongfully deny a claim for damage caused by a collision, which they frequently did by their own admission. If they denied a claim because it exceeded the single event limit, that reason should be found in the claims record. Likewise, rightful denials of claims pursuant to any of the other exclusions should be documented in Defendant's claims file. Individuals whose claims were denied due to "collision damage" or scratches/dents that exceeded certain dimensions will qualify as members of the class. Given the facts presented, the Court finds that members of the proposed class are readily ascertainable with a review of the "Corrective Action" section and other sections of the claims report.

### B. Requirements Under Rule 23(a)

#### i. Rule 23(a)(1) - Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires as a prerequisite to class action that "the class [be] so numerous that joinder of all members is impracticable." *See In re Am. Med. Sys., Inc.,* 75 F.3d at 1079. "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *In re Whirlpool*, 678 F.3d at 418 (citing *Daffin v. Ford Motor Co.,* 458 F.3d 549, 552 (6th Cir.2006)). "Often, a class of 40 or more members is sufficient" to meet the numerosity requirement *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 U.S. Dist. Lexis 85788, at *6 (S.D. Ohio June 5, 2017).

Rule 23(a)(1) also requires that joinder be "impracticable," which requires an inquiry into the specific facts of each case. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). The party seeking class certification is not required to "establish that it is impossible to join all members of the proposed class[,]" but simply that joinder "would be difficult and inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (Black, J.) (quoting *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992) (Spiegel, J)). Other factors considered in the practicability of joinder include the "ease of identifying members and determining addresses,

ease of service on members if joined, and geographical dispersion …" *Turnage v. Norfolk S. Corp.*, 307 Fed.Appx. 918, 921 (6th Cir. 2009).

Here, Plaintiffs have identified 736 members of the proposed Class (ECF No. 138 at 14). Defendant does not dispute that Plaintiff's proposed Class meets the numerosity requirement under Fed. R. Civ. P 23(a)(1). This Court finds that the Plaintiff's proposed Class of 736 members satisfies the "numerosity" requirement" as it is substantial and so numerous as to make joinder of all members impracticable.

ii. *Rule 23(a)(2) - Commonality*

Under Rule 23(a)(2), a plaintiff is required to show that "there are questions of law or fact common to the class." *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013); Fed. R. Civ. P. 23(a)(2). The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 2557–2558, 61 L.Ed.2d 176. A class action is especially appropriate when "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Id.* at 701, 99 S.Ct., at 2557. Although Rule 23(a)(2) speaks of 'questions' in the plural, the commonality test is qualitative rather than quantitative, meaning that there need only be one question common to the class. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). However, the common question[s] must be capable of "generat[ing] common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp. Front–Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013).

Plaintiffs state that their theory raises two fundamental common questions:

(1) Whether Defendants have a policy and practice to deny eligible claims made under the Waiver Agreement for reasons other than a "term" or "condition set forth" in the Waiver Agreement;
(2) Whether Defendants denial of eligible claims under the Waiver Agreement, for reasons other than "terms and conditions set forth" in the Waiver Agreement, constitutes a breach of contract.

(ECF No. 138 at 15-16). Plaintiff argues that these two common questions are sufficient to satisfy the commonality requirement.

Defendant attempts to dispute Plaintiffs' theory by arguing that the common issues presented cannot be answered on a class wide basis. Defendant further argues that the questions

11

presented cannot be answered objectively, and instead require individualized review of each individual's claims. The Court disagrees. *See infra,* pages 7-8.

Plaintiffs have satisfied the commonality requirement by establishing the presence of common questions of law and fact, in this case: 1) whether Defendant had a practice of denying eligible claims for reasons other than those outlined in the Waiver Agreement; and 2) whether a denial for extra-contractual reasons constitutes a breach of contract. The Court invites Plaintiffs to file a Motion for Summary Judgment on these two common issues. If Plaintiffs prevail, which seems likely, the Court will be able to adjudicate the claims of the class members based on objective evidence contained in the claims records. Those members who had claims improperly denied will qualify as members of the class. The Court may adjudicate the claims on a class wide basis by determining whether a member's claim was wrongfully denied based on objective evidence in the claim file. Those members who had claims improperly denied by Defendant will qualify as part of the class.

    iii.    Rule 23(a)(3) - Typicality

The next requirement, under Rule 23(a)(3), states that "the claims...of the representative parties be typical of the claims...of the class." "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). This means that typicality is satisfied when the named plaintiffs' claims "fairly encompass" the class members' claims. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998) (en banc) (quoting *Am. Med. Sys.*, 75 F.3d at 1082). "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool Corp.*, 722 F.3d at 852–53. The interests of the representative plaintiffs' [sic] should be indicative of the interests of the proposed class, such that "as goes the claim of the named plaintiff, so go the claims of the class," *Sprague*, 133 F.3d at 399.

Commonality and typicality "tend to merge" because both "serve as guideposts for determining whether maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 564 U.S. at 349 n. 5.

Plaintiffs argue that the three named Plaintiffs are typical. Each obtained Waiver Agreements submitted claims under the waiver agreement, and all had claims denied for reasons they claim do not correspond to coverage exclusions in the Waiver Agreements. Plaintiffs claim that Defendant has a practice of denying claims for other unjustified reasons, as documented in the claims records, such as a policy for denying claims for scratches in excess of 12 inches and dents over 4 inches in diameter.

Defendant asserts that because the class is defined "in the negative", the viability of each class member's breach of contract claim is not typical of the other. Defendant claims that the criteria are all independent from one another and that each individual's breach of contract claim has their own unique set of facts, and therefore cannot be decided on a class wide basis.

As with the commonality requirement, the Court finds that Plaintiffs' proposed class satisfies the typicality requirement under Rule 23(a)(4). Each class member's claim arises out of the same event: Defendant's practice of improperly denying claims. The fact that the amount of damages may differ between each class member does not disqualify this class since the claims all arise out of Defendant's improper practice of denying claims for extra-contractual reasons. Based on the facts presented, it is clear that the claims of representative plaintiffs are indicative of the rest of the proposed class. Each suffered damages based on Defendant's practice of denying claims for extra-contractual reasons and therefore, the proposed class satisfies the typicality requirement under Rule 23(a)(4).

    iv.    *Rule 23(a)(4) Adequacy*

This Court next turns to the adequacy requirement under Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625–26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citations and internal quotation marks omitted). Courts must use two criteria in determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1083 (citation omitted).

Plaintiffs assert that as representatives of the class, they have the same interest and injury as the unnamed Class Members: they each purchased a Waiver Agreement, submitted one or more claims, and had their claims wrongfully denied by Defendant (ECF No. 138 at 17). Plaintiffs also claim that they are represented by qualified counsel who have experience prosecuting consumer class actions (*Id.*). Defendant does not object to either of these points. Based on this Court's inquiry, Plaintiffs satisfy the adequacy requirement because they possess qualified counsel, and the named Class Representatives possess the same interest and injury as the rest of the Class. Accordingly, the Court finds that Plaintiffs have satisfied all of the requirements under Rule 23(a).

### C. Rule 23(b) Requirements

In addition to the requirements under Rule 24(a), Plaintiffs must satisfy at least one of the Rule 23(b) requirements. In the class action presently before the Court, Plaintiffs claim that the action satisfies the requirements under Rules 23(b)(2) and 23(b)(3). (ECF No. 146 at 15-18).

Under Rule 23(b)(2), a Court is permitted to certify a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Under this rule, class actions are considered "mandatory", meaning that "potential class members do not have an automatic right to notice or a right to opt out of the class." *Reeb v. Ohio Dep't of Rehab. & Corr.,* 435 F.3d 639, 645 (6th Cir.2006); Fed.R.Civ.P. 23(c)(2)(A). "These procedural protections are considered unnecessary for a Rule 23(b)(2) class because its requirements are designed to permit only those classes with homogenous interests." *Coleman v. Gen. Motors Acceptance Corp.,* 296 F.3d 443, 447 (6th Cir.2002).

Rule 23(b)(3), on the other hand, is meant to accommodate claims for monetary damages. *Reeb,* 435 F.3d at 645. Rule 23(b)(3) classes "require notice to the class members, including the member's right to opt out of the class." *Id.* (citing Fed. R. Civ. 23(c)(2)(B)). "The additional requirements of notice and the opportunity to opt out are necessary in Rule 23(b)(3) classes precisely because claims for money damages involve individual interests that are necessarily heterogeneous in nature." *Coleman*, 296 F.3d at 448 (citing Fed.R.Civ.P. 23(c)(2) advisory committee's note).

To begin its analysis, the Court must identify the types of damages at issue in this case. Plaintiffs seek the following relief: (1) a declaratory judgment which finds that the unlawful

conduct alleged in the supplemental amended complaint, namely Defendants' use of extracontractual criteria to deny claims under the Waiver Agreements, constituted an unlawful breach of Contract (ECF No. 138 at 20); (2) an injunction against Defendants, enjoining them from continuing the unlawful practices regarding claims adjustment (*Id.*); (3) an award to Plaintiffs for the maximum amount of actual, statutory, punitive, exemplary and other damages allowed under law, as well as pre and post-judgment interest at the highest legal rate; costs of suit, and reasonable attorneys' fees (ECF No. 52-1 at 19); and (4) such other and further relief as the case may require and the Court may deem just and proper (*Id.*).

i. *Rule 23(b)(2)*

Plaintiffs can pursue the first two categories of relief under Rule 23(b)(2) because they are injunctive in nature. *See* Rule 23(b(2). According to the drafters of Rule 23, monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. In this case, incidental means

> "[D]amages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief .... such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex determinations."

*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998) (internal citations omitted). In this case, Plaintiffs' claims fit the definition of incidental damages in *Allison v. Citgo.* Specifically, here the Plaintiffs' damages are capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Nor would the liability for incidental damages require additional hearings to resolve the merits of each case. Nor would it introduce new and substantial legal or factual issues or any complex determinations. The Sixth Circuit has noted potential concerns when certifying (b)(2) classes "where monetary damages are at issue," due to the fact that the notice and opt-out protections present in the (b)(3) context are not required. *Reeb v. Ohio Dept. of Rehab. & Corr.*, 435 F.3d 639, 647 (6th Cir. 2006). Thus, a court should decline to certify a class under Rule 23(b)(2) where individual monetary damage issues may predominate.

Plaintiffs argue that their request for declaratory relief is appropriate because it applies to the class as a whole. By asking the Court to issue a declaratory judgment stating that Defendant committed an unlawful breach of contract, Plaintiffs argue that the "entire class would be affected at once." Plaintiffs further argue that where the monetary threshold is low, Plaintiffs request for monetary damages do not predominate as a matter of law over the equitable relief sought. Since the maximum amount each class member can recover under the Waiver Agreement is $1,000, Plaintiffs state that this class action fits the "minimal monetary damages" mold.

Defendant, on the other hand, argues that Plaintiffs' class action cannot proceed under Rule 23(b)(2) because the primary relief they seek is monetary damages. (ECF No. 141 at 20). Citing to *Walmart v. Dukes*, Defendants note that the Supreme Court held that claims for injunctive relief may only be certified where the monetary relief is "incidental" to injunctive or declaratory relief. 131 S. Ct. at 2557.

The Court agrees with Plaintiff's theory that the monetary damages in this case are incidental. As Plaintiff articulates, the monetary damages threshold is low, as members of the proposed class are entitled to a maximum of $1,000 for each separate occurrence, subject to a maximum of $5,000. Additionally, calculating the damages awarded to each class member is a simple mathematical calculation. Even though each Plaintiff will likely be entitled to a unique amount, the monetary damages are not dependent on each individual member's injuries. Put differently, the damages in this case are capable of computation by means of objective standards. Therefore, the Court finds that Plaintiffs are entitled to pursue a class action under Rule 23(b)(2).

    *ii. Rule 23(b)(3)*

Plaintiffs argue that the proposed class action is entitled to proceed under Rule 23(b)(3). Given that Plaintiffs satisfy the requirements for a Rule 23(b)(2) class, the Court need not consider the merits of Plaintiffs' claim for class certification under Rule 23(b)(3).

**V.    Conclusion**

Plaintiffs' Motion for Class Certification is **GRANTED** under Rule 23(b)(2). The class shall be defined as follows:

> Each person who entered into an Excess Wear & Tear Protection Waiver with Defendants to provide coverage for a leased vehicle and who (a) submitted at least one eligible claim for coverage under the Waiver Agreement and (b) was denied coverage for a stated reason set forth in Defendants' claims report (or other substantively similar

document) that is not a grounds for non-coverage under the terms and conditions set forth in the Waiver Agreement.

**IT IS SO ORDERED**.

s/ James L. Graham<br>JAMES L. GRAHAM<br>United States District Judge

DATE: October 14, 2024